(112 App. Div. 475)

### HAIGHT v. HAIGHT & FREESE CO.

(Supreme Court, Appellate Division, First Department.   April 20, 1906.)

1. BROKERS—FIDUCIARY RELATION OF PARTIES—ACTIONS FOR ACCOUNTING.

Where a broker accepts from a client orders to purchase and sell securities, and receives certain sums to be applied thereon, such a fiduciary relation exists between them as entitles the client to an accounting in equity of the transactions between them.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, § 31.]

2. SAME—PURCHASES AND SALES ON MARGIN—RECOVERY OF DEPOSIT BY PRINCIPAL.

Where a client intrusts to brokers a sum of money as margin for the purchase and sale of securities, but in fact no purchases or sales were ever made except by offsetting orders to purchase and sell against similar orders from other clients, this did not constitute a fulfillment of the plaintiff's orders; and he is entitled to recover the amount deposited, with interest, though his contract with them provided that any other client might be the purchaser or seller, and that they should not be obliged to disclose the name of the client in any event.

Appeal from Special Term, New York County.

Action by William C. Haight against the Haight & Freese Company. From a judgment (92 N. Y. Supp. 934) in favor of plaintiff, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Albert I. Sire, for appellant.
William P. Maloney, for respondent.

INGRAHAM, J.   The complaint alleges that the defendant is a domestic corporation, engaged in the business of buying and selling stocks, bonds, and securities as stockbrokers upon margin and otherwise; that between the 3d day of February, 1902, and the 14th day of October, 1902, the plaintiff paid over and delivered to the defendant, as his stockbroker and agent, for and upon transactions in the purchase and sale of various corporate stocks and securities, and as margins on the plaintiff's orders to the defendant to purchase and sell various stocks and securities, sums aggregating $17,095, of which various sums were from time to time thereafter withdrawn by the plaintiff from the defendant, aggregating about $8,648.10; that the defendant from time to time claimed to have made purchases and sales upon said accounts, and to have transactions for the purchase and sales of stock and securities for and on behalf of the plaintiff, until about the month of October, 1902; that between the 6th day of October and the 10th day of October the said defendant, as the plaintiff's broker and agent, claim-

ed to have in his possession, and to hold for on account of the plaintiff, various shares of stock mentioned; that on the 14th day of October, 1902, the plaintiff demanded a statement of the defendant, showing the condition of the plaintiff's account, which the defendant refused to deliver; that on or about the 10th or 12th day of October, 1902, the defendant, without notice to the plaintiff, and while the plaintiff had ample margin to secure his account, and without any request for margin or demand for payment from the plaintiff, claimed to have sold out the said alleged stocks which it then claimed to be holding and carrying for the plaintiff; that thereupon the defendant claimed that the plaintiff's account was closed, and that the money deposited by the plaintiff was exhausted; that plaintiff since that time has demanded an accounting from the defendant, which was refused; that the said transactions of the defendant, purporting to be purchases and sales of stocks and securities for the plaintiff, were in fact not purchases or sales of stock; and that the defendant did not sell or purchase stock for the plaintiff as claimed, but had from time to time provided for the alleged execution of said orders of the plaintiff to purchase or sell, as the case was, mere orders or alleged agreements with other person or persons throughout the United States and Canada to sell stock or buy stock in reverse of the order given by the plaintiff. The answer admits that the plaintiff deposited with the defendant various sums of money as margin for the purchase and sale of the stock and other commodities, as shown in an account annexed to the answer, between the 3d of February and the 14th of October, 1902, and alleges that the defendant, at the request of the plaintiff, executed his orders as shown in said account; and further alleges that, upon the plaintiff's orders to buy and sell stocks and other commodities upon margin, the defendant did execute the same, as shown in said account, and that upon such transactions the margin of plaintiff became exhausted, and that, as the plaintiff's margin with the defendant was exhausted, it did, upon due notice to him, sell the same. The defendant claims that the plaintiff was not entitled to an accounting; that the only relief that the plaintiff could have was in an action at law either for damages or to recover the amount due to the plaintiff under the arrangement between the parties, and that, therefore, it was entitled to a dismissal of the complaint.

The right of the plaintiff to an accounting must depend upon the relations that existed between him and the defendant. If the relation was in its nature fiduciary, then the plaintiff has a right to come into a court of equity, and require the defendant to account for its acts in relation to the transactions between the parties. The character of the relations which would justify an action for an accounting is discussed in Marvin v. Brooks, 94 N. Y. 71. It is there said:

"But the jurisdiction of the latter court over trusts and those fiduciary relations which partake of that character remains, and in such cases the right to an accounting seems well established. But the existence of a bare agency is not sufficient. If it was, it would draw into equity every case of bailment in which an account existed."

And quoting with approval from Foley v. Hill, 2 H. of L. Cas. 28, where it was said:

"The court added, however, that as between principal and factor the equitable jurisdiction attached, because the latter partook of the character of a

trustee, and that 'so it is with regard to an agent dealing with any property; * * * and though he is not a trustee according to the strict technical meaning óf the word, he is quasi a trustee for that particular transaction,' and therefore equity has jurisdiction. * * * An accounting is always proper in cases of partnership, yet where the parties were not partners, but the relation existing was that of a quasi partnership, and the position of the party sued involved 'the same trust, duties, and obligations,' the right to an accounting was declared. * * * In this case Brooks stood relatively to Marvin as his agent to purchase for him one-half of the Ward interest, and when intrusted with Marvin's money to be so applied, at a price to be by him determined, and to cover the whole of an unknown interest, he stood in a fiduciary relation, and became a quasi trustee of the money in his hands and of the property purchased, and Marvin has the right to call him to an account in equity."

This case has been since followed, and has been considered as establishing the jurisdiction of a court of equity to require a person occupying the relation of broker, who receives money from another to invest under his directions, to settle and adjust the accounts between them. It is alleged in the complaint, and admitted in the answer, that the plaintiff deposited with the defendant various sums of money to be used in the purchase of securities; the defendant to hold the securities purchased to secure the purchase price over and above that furnished by the plaintiff. There was thus, I think, established a relation which was fiduciary in its nature, which entitled the plaintiff to resort to a court of equity to require the defendant to account for the money which the defendant has received, and as to the disposition that he had made of it, and thus to adjust the accounts between the parties, and determine the balance due from one to the other. In this connection it is proper to notice that the defendant does not allege that the plaintiff has an adequate remedy at law, and no objection is taken in the answer that the plaintiff cannot maintain an action for an accounting; but, on the contrary, setting forth the relation that existed between the parties, the defendant sets up a counterclaim, alleging that the plaintiff delivered to the defendant worthless securities, alleging them to be of great value, upon which the defendant gave the plaintiff credit, and that by reason of the plaintiff giving orders to the defendant to buy and sell stocks upon such worthless margin, and which orders the defendant executed, the defendant has paid out, by plaintiff's orders, and to his account, the sum of $1,123.67; that the defendant has tendered the said worthless securities to the plaintiff, and demanded the payment of that sum, which the plaintiff has refused to pay; and the defendant therefore demands an affirmative judgment against the plaintiff for that sum, with interest.

The defendant accepted from the plaintiff orders to purchase and sell securities, and received therefor certain sums of money to be applied upon such purchases and securities, which were to be held as security for any payment that the defendant should make upon a purchase by him of these securities ordered to be purchased for the plaintiff; and this relation, I think, gives to the plaintiff the right to come into a court of equity, and call upon the defendant to account for the transactions by which it executed the plaintiff's orders. The relation being

thus established, and the fact that sums of money were paid by the plaintiff to the defendant to apply on account of the orders given to the defendant to purchase securities, the defendant was bound to account in relation to the transactions that it has had under the order of the plaintiff. Unless it had expended these moneys, or incurred obligations on behalf of the plaintiff, he was entitled to recover the balance due him of the moneys that he had deposited with the defendant. To prove his case, the plaintiff introduced in evidence the examination before trial of the manager of the defendant's New York office, From the testimony of this witness, it appeared that the defendant maintained various branches or agencies throughout the United States and Canada, at which branches and agencies they had various dealings with other customers in relation to orders for the purchase and sale of stocks and other securities. The method by which they transacted this business was that these orders to purchase and sell securities were offset against each other. It appears, as a matter of fact, but few, if any, stocks were actually purchased or sold on account of these various transactions; that when the plaintiff would give an order to the defendant to purchase a certain number of shares of stock, the defendant would report to him that such a number of shares had been purchased at the prevailing market price, and that subsequently those accounts could be balanced on the defendant's books by charging to him, as purchase for his account, the stocks that other customers of the defendant had ordered sold; and orders received at these branch agencies or offices thus offsetting the purchase which it had been ordered to make for the plaintiff. It is not alleged or proved that any of these customers ever had any stocks to sell, or that when the plaintiff's orders were actually executed the defendant's manager in New York had knowledge of these other various transactions, or what particular transactions would be applied to the fulfillment of the plaintiff's orders. There was thus no real transaction, but merely a bookkeeping account, whereby purchases and sales offset each other. There was no actual purchase on account of this plaintiff of any stock in fulfillment of his orders, no stock that the defendant ever held for the plaintiff, and it follows that the defendant never really purchased any stock for the plaintiff, or ever had in its possession or under its control the stock that the plaintiff ordered the defendant to purchase. All of these accounts upon which the defendant bases its defense were thus shown to be false upon their face. They represented that the defendant had purchased stock for the plaintiff, when in fact no such stock had been purchased; and, assuming that there had been an accounting based upon the purchase of these stocks by the defendant, which the plaintiff had accepted as true, when it subsequently appeared that these accounts were fraudulent upon their face, as being based upon a purchase of stock when none in fact was made, such accounts were entirely insufficient to bind the plaintiff.

It is quite impossible to examine in detail the evidence in this case, as it is quite voluminous, but it is entirely clear that all through this transaction there was never a real purchase or sale of stock by the defendant on account of the plaintiff, and all these credits and debits based upon an actual purchase or sale of stock were purely fictitious

and fraudulent, and the court below was right in refusing to adopt them as representing any transactions for which the plaintiff was chargeable.

The defendant, however, seeks to sustain this transaction by introducing the orders signed by the plaintiff, which it is claimed the defendant executed. These orders were directed to the Haight & Freese Company, and were as follows: "Buy for my account, subject to stipulations on reverse side, which are part of our agreement." Then followed the number of shares of stock that the plaintiff desired the defendant to purchase, and this was signed by the plaintiff. On the reverse side of this order was printed the following:

"'This order may be executed in any city or place, either on any exchange, through a member thereof, and subject to its customs and rules, or by private purchase, as Haight & Freese Company may elect, and any other client of Haight & Freese Company may be the seller. But Haight & Freese Company is not to be obliged to disclose the name of any client in any event. The purchase may be made delivery on purchaser's demand. Haight & Freese Company may pledge for any amount the securities when bought, mingled with the securities of other customers or of the brokers themselves, and may loan any stock, giving the borrowers the right to sell and to return different certificates, and may, without any demand of, or notice to, me whatever, and on my exchange, or by private sale, close out all transactions on margin—(1) as to the securities, whenever margin is less than one-half of one per cent. of the aggregate of the par value of all the securities being carried for me on margin, and (2) as to the commodities, whenever margin is exhausted. All others to buy, hereafter or heretofore given, are to be considered as subject to the above, unless otherwise expressly stipulated therein.'"

On the back of the order to sell was a stipulation substantially the same, leaving out the provisions giving to the defendant the right to pledge the securities purchased. Assuming that such a contract was valid and would be enforced, there was contemplated an actual purchase of securities for the account of the plaintiff, or a sale of securities for his account; and to justify the defendant in charging the plaintiff with a transaction under such an order it was necessary to show that some securities were actually bought or sold. A mere bookkeeping account, charging up orders of other customers for the sale of the securities, or orders of other customers to purchase them, where there was no stock either sold or bought which was not an actual transaction, would not, as I view it, even under this agreement, be a transaction which would justify a charge against the plaintiff. This testimony discloses that there never was any stock purchased or sold, or intended to be purchased or sold, on account of this plaintiff, and there was never any real transaction in relation to this purchase or sale, except the bookkeeping entries charging the defendant with stock that he never purchased; and, there being no actual transactions, the defendant was not entitled to charge against the plaintiff any of these fictitious charges. There having, therefore, been actually no transactions upon the plaintiff's orders, the defendant had never carried out the plaintiff's orders, and the plaintiff was entitled to recover from the defendant the amount that he had paid to the defendant on account of these transactions, less the amount that he had withdrawn. The court having taken the accounting and having ascertained that amount, it was justified in taking and stating the accounts, and having ascer-

tained the balance and directing a judgment for the plaintiff for the amount due.

I think the finding of the trial court was clearly sustained by the evidence; that when the court found, as it did, upon evidence which justified the finding, that "no bona fide sales or purchases of stocks were made for or on behalf of plaintiff in his said accounts, and all of the said transactions and purchases and sales were fictitious and bogus, and mere bookkeeping entries, with no foundation in fact," and that the amount due to the plaintiff is undisputed, and that an interlocutory judgment and account was unnecessary, and that the balance of the money remaining in the defendant's hands belonging to the plaintiff is $8,446.90, and the interest thereon is $1,340.35, making in all the sum of $9,787.25, the conclusion of law necessarily follows that the plaintiff was entitled to judgment against the defendant for that amount.

The judgment appealed from should be affirmed, with costs. All concur

