SAMUEL LIPKIEN and JACK GOODNEY, Appellants, v. JOSEPH KRINSKI and HARRY S. KRINSKI, Respondents.

First Department, May 28, 1920.

Principal and agent — delivery of money to stockbrokers for purchase of securities on margin — suit in equity for accounting — suit lies although plaintiffs purchased stocks for their own customers — fiduciary relation between stockbrokers and customers.

Where stockbrokers, being members of a clearing house, received the moneys of the plaintiffs, who were also stockbrokers, as customers for the purpose of carrying stocks and securities purchased on a margin for the plaintiffs, and refuse on demand to pay over said moneys and account therefor, an interlocutory judgment requiring them to account in a suit in equity is properly granted and relief should not be denied upon the ground that the securities were purchased by the plaintiffs for their own customers, and that no fiduciary relation existed between the plaintiffs and the defendants, it appearing that the moneys received by the defendants belonged to the plaintiffs and the defendants knew no other parties concerned in the transactions.

It is well settled that where a customer deposits with brokers moneys to be used in the purchase of securities, a fiduciary relationship arises between them entitling the customer to require the brokers to account in a court of equity for any of the customer's moneys which they have received.

APPEAL by the plaintiffs, Samuel Lipkien and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 25th day of February, 1920, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint.

*Philip C. Samuels*, for the appellants.

*David Robson*, for the respondents.

MERRELL, J.:

This action is to obtain an interlocutory judgment requiring the defendants to account for certain transactions wherein said defendants acted as stockbrokers for the plaintiffs, and to whom plaintiffs had paid certain moneys for the purchase and carrying of stocks on margin for plaintiffs' account.

The complaint alleges the copartnership of the plaintiffs and

that of the defendants, and that the latter were engaged in the city of New York as stockbrokers in buying and selling stock, bonds, securities and commodities upon margin and otherwise; that between the 28th day of May, 1918, and the 19th day of December, 1918, the plaintiffs employed the defendants as such stockbrokers to purchase certain stocks and securities for the plaintiffs and as margin upon such purchases the plaintiffs deposited with the defendants divers sums of money and securities in excess of $2,000, upon defendants' agreement to purchase such stocks and securities, and to carry the same for the account of the plaintiffs; that the account was conducted in the name of S. Lipkien, one of the plaintiffs; that pursuant to such employment the plaintiffs did, during said period, from time to time, order and direct defendants to buy for their said account certain divers stocks and securities, and that defendants reported to plaintiffs and claimed that they had purchased such stocks and securities pursuant to plaintiffs' orders and claimed to have and hold the same in their possession for plaintiffs' account; that subsequently the defendants reported to plaintiffs claiming that they had sold for the account of the plaintiffs certain of said stocks and securities. Upon information and belief, the plaintiffs further allege that the said claims of the defendants that they were carrying said stocks and securities and that they had advanced the necessary balance for carrying the same for the plaintiffs were untrue, and that certain stocks not ordered by the plaintiffs were charged to their account with certain interest charges therein which were not due from the plaintiffs; that prior to the commencement of this action plaintiffs demanded of the defendants an accounting of all their transactions for and in behalf of the plaintiffs, which the defendants refused to make. Thereupon the plaintiffs demanded judgment that the defendants account to them for the moneys and stocks received by defendants from the plaintiffs, and that the defendants render to plaintiffs a full and complete account of their transactions and dealings for and in behalf of plaintiffs, and that the plaintiffs recover of the defendants the moneys and property found their due upon such accounting, together with interest thereon.

The answer puts in issue all of the allegations of the complaint, and for a distinct and separate defense and counterclaim

the defendants allege that the defendant Harry S. Krinski and one Benjamin Krinski were the copartners constituting the firm of Krinski & Co., conducting a stockbrokerage business at No. 20 Broad street, in the borough of Manhattan, city of New York, and that on and between May 13, 1918, and December 19, 1918, the plaintiff Samuel Lipkien had an account in his individual name with the said Harry S. Krinski and Benjamin Krinski, and deposited with said Krinskis divers sums of moneys, certificates, stocks and securities as collateral for moneys expended by them on his account in the purchase of stocks, certificates and other securities on the order of the plaintiff Samuel Lipkien, and that said Samuel Lipkien, through one of the defendants Joseph Krinski, Benjamin Krinski and one Louis Gilbough, acting as brokers for him, ordered the sale and purchase for him, respectively, of certain stocks, certificates and other securities which the said Harry S. Krinski and Benjamin Krinski bought and sold and carried for the account of said plaintiff; that daily reports were made by said Krinskis to the plaintiff Samuel Lipkien in writing of purchases and sales made by them for the account of said plaintiff; that the said plaintiff Samuel Lipkien failed and neglected to advance sufficient moneys to cover margins on the purchase of stocks and other securities upon his account, and that there is a balance due said Krinskis from said plaintiff of $122.97, for which defendants demand judgment against the plaintiff.

The allegations of defendants' separate defense and counterclaim are put in issue by plaintiffs' reply thereto.

The action came on for trial at Special Term, and at the close of the plaintiffs' case, upon motion of the defendants, the learned court dismissed the complaint, whereupon judgment was entered in favor of the defendants and against plaintiffs dismissing said complaint, together with costs in favor of the defendants and against the plaintiffs.

In granting defendants' motion to dismiss it may be inferred from the remarks of the court that it doubted whether a fiduciary relation could exist between brokers, and that the court desired the submission of authorities in support of plaintiffs' claim. The court, however, stated that it appeared that the real purchasers or sellers of the stock were customers

of the plaintiff, and that the plaintiff had transactions executed by the defendant, and a situation entitling the plaintiffs to require an accounting by the defendants was not presented. An examination of the evidence leads me to the conviction that the court erred in thus disposing of the action. The only evidence given was the testimony of the two plaintiffs, and for the purposes of the motion the court was bound to accept as true the facts to which they testified. By the testimony of the plaintiffs it appeared without contradiction that the plaintiffs were copartners engaged in the brokerage business in the borough of Manhattan, city of New York, under the firm name and style of Goodney & Lipkien; that the plaintiffs were acquainted with the defendants, and that said defendants were copartners in the business of buying and selling stocks, bonds and other securities; that in the month of May, 1918, the plaintiff Samuel Lipkien called upon the defendants and inquired of the defendant Joseph Krinski as to what he would charge the plaintiff to carry his stock on margin; that Krinski told him to give him additional margin, which he did, giving him some money to open the account and to buy and sell stock; that subsequently, whenever the defendant bought stock and wanted more money or when stock went down in price and the defendant wanted more money, the plaintiffs gave it to him. The plaintiffs produced and there were offered and received in evidence eight checks drawn by the plaintiffs under the firm name and style of Goodney & Lipkien, some of which were payable to the order of the defendant Joseph Krinski and others to the firm of J. Krinski & Co., and which were indorsed by the payee and most of which were ultimately indorsed by the firm of Krinski & Co., covering various sums of money paid by the plaintiffs to the defendants for and on account of the purchase of said stocks and to cover margins thereon. Said eight checks aggregate the sum of $1,960, and it satisfactorily appeared by the evidence that all of the money covered thereby was the money of the plaintiffs, and that all of the stocks were carried by defendants for the plaintiffs Goodney & Lipkien. Upon cross-examination the plaintiff Samuel Lipkien testified that the reason why the plaintiffs dealt with the defendants was that the latter were members of the Clearing House, and the plaintiffs were not,

and that said arrangement was to facilitate the purchase and sale of stocks and securities for plaintiffs' customers which the plaintiffs were unable to execute because they were not members of the New York Clearing House. It further appeared that so far as the transactions between the parties were concerned, the plaintiffs were the customers of the defendants, and that while the account with the defendants stood in the name of the plaintiff Samuel Lipkien the stocks were, in fact, carried for both the plaintiffs, and that the checks given the defendants to carry the same were the checks of the plaintiffs and covered plaintiffs' accounts; that the defendants never inquired as to who were plaintiffs' customers; that they had nothing to do with plaintiffs' customers and carried the account for the plaintiffs alone; that defendants charged plaintiffs and were paid half commissions upon said transactions in accordance with custom between brokers.

It is the contention of the respondents upon which they seek to uphold the action of the court at Special Term that the plaintiffs were not the customers of the defendants, but merely cleared through them, and that the relationship of broker and client did not exist and that no fiduciary relationship ever existed between the plaintiffs and the defendants. I am unable to agree with such contention. The evidence clearly shows that so far as the defendants were concerned they knew no one in the various transactions except the plaintiffs. So far as the evidence shows it was the plaintiffs' money alone that the defendants received. The mere fact that the plaintiffs may have acted in behalf of their customers in nowise changes the situation. Even assuming the defendants were clearing for plaintiffs, who in turn were serving their customers in the transactions, still I see no reason why the defendants should not account for moneys paid to them by the plaintiffs and by whom the defendants were employed. The evidence shows that the plaintiffs paid to the defendants $1,960 of their own money. This the defendants received and claim to have expended in various transactions which they conducted in behalf of the plaintiffs. The defendants claim that they have expended more than the moneys which they received from the plaintiffs, and that there is a balance due them. Under these circumstances I can see no reason why

the defendants should not account to the plaintiffs for the moneys which they have received.

In 2 Dos Passos on Stockbrokers (2d ed. p. 767) it is said: " In *equity* the best-known remedy to enforce a liability where there have been numerous transactions between the client and broker is by bill for an accounting. It is one of the settled principles of equity jurisprudence, that where the relation of principal and agent, or broker, exists, a bill in equity will lie to compel an accounting. And the liability to do this follows, as a matter of course, from the admission or establishment of the agency. By means of a bill filed by the principal, or client, against the agent, or broker, all of the transactions may be investigated, and a fuller and more satisfactory result reached than by any other means."

The position of the plaintiffs, appellants, finds support in the case of *Noble* v. *Kendall* (182 App. Div. 801). That was a case where the plaintiff opened an account with a Washington firm of brokers for the purchase and sale of stock on margin. The Washington brokers employed the defendant Kendall, a New York broker, to execute said stock transactions in the city of New York. The plaintiff brought action for an accounting, joining as parties defendant the Washington brokers and the New York broker, alleging that they acted jointly as plaintiff's agents and brokers. The case reached this court upon appeal from an order denying the motion of the New York broker for judgment upon the pleadings arising upon his demurrer to the plaintiff's complaint for insufficiency, and from the order granting plaintiff's motion for judgment overruling said demurrer. This court reversed the order appealed from and granted the motion of the New York broker for judgment upon the pleadings. While perhaps unnecessary to the decision in that case, this court in the opinion written by Mr. Justice LAUGHLIN, all the other members of the court concurring, said: " If, as is fairly to be inferred, the Washington brokers employed appellant's firm to execute the orders, then the latter would be answerable not to plaintiff, but to the other brokers who employed them. (*Evans* v. *Wrenn*, 93 App. Div. 346; affd., 181 N. Y. 566. See, also, *Montgomery County Bank* v. *Albany City Bank*, 7 N. Y. 459; *McBride* v. *Illinois Nat. Bank*, 163 App. Div. 417.)"

It seems to me that from the uncontroverted evidence it is shown that the account with the defendants was owned by the plaintiffs, and that the plaintiffs' moneys were paid to the defendants and were received by them for the purpose of executing plaintiffs' orders; that, as between the parties, the plaintiffs were the customers of the defendants. The ground upon which the learned court at Special Term dismissed the complaint was not claimed by the defendants, nor does their answer contain any allegations with reference thereto. The law is well settled that where a customer deposits with brokers moneys to be used in the purchase of securities, a fiduciary relationship arises between them entitling the plaintiffs to require the defendants to account in a court of equity for any of the plaintiffs' moneys which they have received. (*Haight* v. *Haight & Freese Co.*, 112 App. Div. 475; affd., 190 N. Y. 540.)

The judgment appealed from should be reversed and a new trial granted, with costs to appellants to abide event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment reversed and a new trial ordered, with costs to appellants to abide event.