Samuel H. Hoestadter, J.
This action was instituted in 1950 by the Attorney-General in behalf of the People against the corporate defendant Mercer Hicks Corporation (Mercer Hicks) and the individual defendants under article 23-A of the General Business Law, commonly known as the Martin Act. By order of July 31, 1950, this court appointed a temporary receiver of property of Mercer Hicks derived “ by means of fraudulent practices alleged, including all property with which said property has been commingled, if such property cannot be identified in kind because of such commingling ”. By the final judgment later entered in the action the temporary receiver was appointed permanent receiver.
The controversy now presented for determination concerns the proceeds of certain securities delivered to Mercer Hicks for sale by the trustees under the will of Amne A. Kimber (Bomber Trustees). The securities were sold between June 13 and 15, 1950, and the net proceeds of the sales, amounting to $15,853.49, were deposited in the Mercer Hicks bank account with the Manufacturers Trust Company on June 16,19 and 20,1950. The Kimber Trustees, asserting these proceeds still to be their property traceable into the bank account, moved in September, 1950 to direct the receiver to pay over to them the foregoing sum of $15,853.49. Their motion was denied and the denial affirmed on appeal. (People v. Mercer Ricks Corp., 198 Misc. 628, affd. 278 App. Div. 566, appeal dismissed 302 N. Y. 843, leave to appeal denied 278 App. Div. 940; the appeal so dismissed in the Court of Appeals had been taken by the Kimber Trustees as of right on the ground that á constitutional question was presented; and their subsequent application for leave to appeal to the Court of Appeals was denied by the Appellate Division). In denying the initial Kimber application the court at Special Term stated that since the Kimber securities were no longer identifiable in the commingled fund, the court could not direct the return of either the securities or their proceeds (198 Mise. 628, 630).
After the entry of final judgment the receiver filed his intermediate report, on which a reference was ordered. On motion by the receiver to confirm the Referee’s report and on cross motion by the Kimber Trustees to direct the receiver to pay to them the proceeds of the securities, the court at Special Term denied the Kimber cross motion and allowed the Kimber claim *57 as one on a parity with the claims of persons who had been defrauded by Mercer Hicks. From the order made on this ruling the Kimber Trustees took a direct appeal to the Court of Appeals, claiming that only a constitutional question was involved, but their appeal was again dismissed (306 N. Y. 560). They also appealed to the Appellate Division from the denial of their cross motion. The Appellate Division did not definitively dispose of the appeal but remitted the matter to Special Term. In its memorandum the court said: “Unfortunately, after a hearing in this matter certain facts essential to the determination of appellants’ claim have not been ascertained and on the record before us are not ascertainable. The matter must, therefore, be remitted to Special Term to trace the source of deposits made in the bank account at the time of and after the deposit of appellants’ funds and to identify the recipients of the subsequent withdrawals. Specific findings are required as to these items and a responsive determination of appellants’ claim should then be made by Special Term. Order unanimously modified and the matter remitted to Special Term for further proceedings in accordance with the above memorandum.” (284 App. Div. 957.)
On the order of the Appellate Division a Referee was appointed to take testimony and report his specific findings and opinion. The report of this Referee is now before the court. The Referee has made a full and detailed analysis of the Mercer Hicks account with the Manufacturers Trust Company during the critical period between June 16, 1950, when the first deposit' of Kimber proceeds was made, and the taking over of the balance of $20,393.80 in the account by the receiver. The Referee applied the rule declared in Importers & Traders’ Nat. Bank v. Peters (123 N. Y. 272) that when a person holding money in a fiduciary capacity deposits it in his general bank account and thereafter makes withdrawals from the account, he is deemed to have taken out his own rather than the trust money. In such situation, as between the trust funds and the individual funds of the fiduciary, the rule attributing the first withdrawals to the first payments in is inapplicable (Matter of Holmes, 37 App. Div. 15, affd. 159 N. Y. 532). The Referee reports that the Kimber claim of $15,853.49, and those of two other claimants similarly situated, total $19,247.84, but that at no time after the Kimber deposits were made, did the balance in the bank account fall below the final balance of $20,393.80, taken over by the receiver. Accordingly, the Referee concluded that the Kimber Trustees “ have traced their funds into the Manufacturers bank account and have established that none of *58 these funds have been dissipated by reason of subsequent withdrawals or charges ”.
The receiver argues that the Referee erred in treating the decision of the Appellate Division which we have quoted as settling the right of the Kimber Trustees to trace their funds into the bank account. This contention must be rejected. In the Appellate Division the receiver urged that the prior denial of the Kimber claim for the return of the sale proceeds, affirmed on appeal, had already determined the issue adversely to the Kimbers. Had the court agreed with this view, it would have affirmed, not modified the order with a remand to Special Term. Otherwise, the remand would have been a sheer futility.
Even were the question of the right of the Kimber Trustees to trace the proceeds of the sale of their stock as trust funds still an open one, it must be held that their position is well grounded. It is established that the relation between a customer and his stockbroker is that of principal and agent. The stockbroker is a fiduciary. Title to securities bought or sold by the stockbroker is in the customer, not the stockbroker. The proceeds of the sale therefore belonged to the Kimber Trustees and, so far as traceable, may be reclaimed (Marvin v. Brooks, 94 N. Y. 71; Markham v. Jaudon, 41 N. Y. 235; Haight v. Haight & Freese Co., 112 App. Div. 475, affd. 190 N. Y. 540; Lipkien v. Krinski, 192 App. Div. 257; Richardson v. Shaw, 209 U. S. 365; People v. Meadows, 199 N. Y. 1). The Referee’s report is, therefore, confirmed and the Kimber Trustees are held to have traced the sum of $15,853.49 and thus to have established their right to its return, as a trust fund held by Mercer Hicks.
The Appellate Division order pursuant to which the reference was directed modified the order from which the Kimbers had appealed “ with costs to abide the event ”. Since the Kimbers have succeeded on the reference, they are entitled to the costs of the appeal to be taxed.
The Kimber Trustees also claim interest on the fund. Were this claim allowed, it would almost, if not entirely, exhaust the moneys in the hands of the receiver, and leave little, if anything, for administration expenses, and nothing at all for the victims of the Mercer Hicks frauds. The general rule in the distribution of insolvent estates administered by a receiver is to disallow interest' after the date of the receiver’s appointment (Thomas v. Western Car Co., 149 U. S. 95, 116; People v. American Loan & Trust Co., 172 N. Y. 371, 379). The same rule applies in bankruptcy, even in respect of a tax claim of the United States (Matter of Lykens Hosiery Mills, 141 F. Supp. 895).
*59 Strictly, perhaps, the Kimber Trustees, as claimants to trust funds, may not be in the same position as creditors. However, the fund in the receiver’s hands is insufficient to meet the Kimber claim in full with interest, and also administration expenses and the other claims which have been allowed. The exceptional situation in which interest has been held recoverable — the presence of a large enough estate to satisfy all claimants (Matter of People [Norske Lloyd Ins. Co.], 249 N. Y. 139; Cable & Wireless, Ltd., v. Yokohama Specie Bank, 191 Misc. 567, 579) — does not exist here. In the circumstances, the general rule should be applied.
No equity here dictates departure from this general rule, especially when it is borne in mind that the receivership extended to commingled property not identifiable in kind because of such commingling, that in the early stages of the receivership it was decided that the fund here in issue was not identifiable and that the receiver has since been holding the fund under the protection of the order entered on that decision. Obedience to that order, while effective, prohibited the release of the fund to the Kimber Trustees. The demand for interest is accordingly disallowed.
The Kimber Trustees assert further that the fund to which they are now adjudged entitled should not bear any part of the administration expenses. They contend, in effect, that, since it is now being held that they may reclaim the fund, it has always been their property and never was lawfully in the hands of the receiver. This contention, however, wholly ignores the realities of the situation as well as the purposes of the Martin Act. To uphold it might in many situations tie the hands of the receiver and thus defeat the objectives of the act (see People v. Reinforced Paper Bottle Corp., 176 Misc. 464, 468-471). It loses sight of the fact that the rights of the Kimber Trustees have been ultimately declared only after extended litigation in the course of which the receiver’s right to retain the fund in his possession was upheld. In administering the fund until a final judicial determination, the receiver was discharging his duty as an officer of the court.
There is a suggestion by the Kimber Trustees that the receiver’s resistance of their claim was unwarranted and for this reason their fund should not be charged with administration expenses. They fail, however, to show how the receiver could safely have complied with their demand without a judicial determination of the issues. It follows that the fund may not be exonerated from its fair portion of the administration expenses.
*60 Since the administration expenses can be ascertained only on the receiver’s final accounting, not until then will it he known to what extent, if any, the Bomber fund will be depleted by a charge of its share of those expenses. If any equity should relieve the Bomber fund of its full proportionate share of the expenses, this may be shown on the receiver’s accounting and this determination is made without prejudice to the right of the Bomber Trustees then to raise that issue. The present record is insufficient for an informed judgment on the question. In any event, no present direction for payment to the Bimber Trustees can be made.
The Referee’s allowance will be fixed in the order which will direct its payment by the receiver as an expense of administration. Settle order.