OPINION OF THE COURT
Max Bloom, J.
Plaintiff moves pursuant to CPLR 902 for an order permit *942 ting maintenance of this suit as a class action. The complaint alleges that the defendant, a stockbroker, violated and continues to violate a fiduciary duty owed to its customers by withholding funds due them for a period of 24 hours or more, thus permitting it to use such funds for a day or more for its own profit. This was and is accomplished by drawing checks for sums due to its New York customers on its account at the Bank of America in San Francisco. Inasmuch as checks drawn here on California banks take at least 24 hours longer to clear through the Federal Reserve System than do checks drawn upon banks located within New York, defendant obtained for itself, at least one, and sometimes two, additional days’ interest on the moneys so paid out. The total of the "float” on these funds is estimated at about $2,000,000 for 1977. The complaint seeks to enjoin the defendant from continuing its practice and to recover defendant’s profits resulting therefrom and disbursal thereof to members of the class. Plaintiff asserts that the large number of customers who have been affected, the minimal injury to each in the form of lost interest, and the very substantial damage to all makes class certification appropriate.
CPLR article 9, which governs class actions, adopts the general scheme of rule 23 of the Federal Rules of Civil Procedure. However, the CPLR is simpler in structure and consistent with a more functional operation and seeks to overcome limitations imposed by the Federal rules (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.03; Mem approval of Governor to L 1975, ch 207, NY Legis Ann, 1975, p 426). CPLR 901 (subd a) sets forth five prerequisites for maintaining an action by a representative party on behalf of the class. CPLR 902 in addition to providing the procedure to be followed, sets forth five illustrative practical considerations to guide the court in its determination of class status (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C902:l). The requirements which must be met before class action status may be granted are: "1. the class is so numerous that joinder of all members * * * is impracticable; 2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members; 3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; 4. the representative parties will fairly and adequately protect the interests of the class; and 5. a class action is superior to *943 other available methods for the fair and efficient adjudication of the controversy”. (CPLR 901, subd a.)
Plaintiff maintains that each of these criteria has been more than adequately met. Defendant, however, vigorously contests many of them. Accordingly, they will be examined seriatim.
I: SIZE OF THE CLASS (CPLR 901, SUBD A, PAR 1)
It is admitted that for the eight-month period from September 1, 1976 through April 30, 1977, defendant issued more than 63,000 checks to its New York customers drawn on its account at the Bank of America in California. These totaled $216,358,000. Moreover, the routing of check payments cross-county continues to the present time. Clearly, the individual joinder of potentially thousands of members of the putative class is impractical (Guadagno v Diamond Tours & Travel, 89 Misc 2d 697, 698; Swanson v American Consumer Inds., 415 F2d 1326, 1333; Berland v Mack, 48 FRD 121; Cusick v N.V. Nederlandsche Combinatie Voor Chemische Industrie, 317 F Supp 1022; Herbst v Able, 47 FRD 11; Green v Wolf Corp., 406 F2d 291, cert den 395 US 977; Rockier & Co. v Graphic Enterprises, 52 FRD 335, 339; 2 Weinstein-Korn-Miller, NY Civ Prac, par 901.04; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C901:2; 3B Moore, Fed Prac [2d ed], par 23.05; Fed Rules Civ Pro, rule 23, subd [a], par [1]; see, also, Case Co. v Borak, 377 US 426, 432-433; Daar v Yellow Cab Co., 67 Cal 2d 695).
Indeed, considering the small individual benefit to be derived from joinder and the high cost of such litigation, it is highly unlikely that any considerable number of those affected by the practice would be tempted to join as parties plaintiff, if class status is not granted.
II: COMMON QUESTIONS OF LAW OR FACT (CPLR 901, SUBD A, PAR 2)
While "[s]eparate wrongs to separate persons, though committed by similar means and even pursuant to a single plan, do not alone create a common or general interest in those who are wronged” (Society Milion Athena v National Bank of Greece, 281 NY 282, 292; see, also, Ray v Marine Midland Grace Trust Co., 35 NY2d 147, 151; Gaynor v Rockefeller, 15 NY2d 120, 129; Onofrio v Playboy Club of N. Y, 15 NY2d *944 740), here the wrong complained of is identical for each of the members of the putative class. Similarly, the several defenses that have been raised are available against all class members.
It is unnecessary that every question be common to each member of the class; all that is required is that common questions predominate over individual ones (Ray v Marine Midland Grace Trust Co., supra, p 154; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C901:3; 2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08; cf. Matter of Miles v Lascaris, 84 Misc 2d 96, 98). While the amounts potentially recoverable by each member of the class may differ, such circumstance is not sufficient to warrant denial of class status (Werfel v Kramarsky, 61 FRD 674, 682; Leisner v New York Tel. Co., 358 F Supp 359, 372; Senter v General Motors Corp., 532 F2d 511, 524-525; Herbst v Able, 47 FRD 11, 17, supra; City of Philadelphia v American Oil Co., 53 FRD 45, 67-68; cf. Koehler v Ogilvie, 53 FRD 98, 100-101, affd 405 US 906; Strauss v Long Is. Sports, 60 AD2d 501, 506-507; see, also, Liberty Alliance of Blind v Califano, 568 F2d 333, 346-347; Swanson v American Consumer Inds., 415 F2d 1326, 1333, supra; see, generally, 89 Harv L Rev 1318, 1489-1498).
Indeed, in the light of the power of the court to mold the plastic remedies of chancery to meet the exigencies of particular situations, this insubstantial difference among members of the class is of no moment. Thus, in Daar v Yellow Cab Co. (67 Cal 2d 695, supra), the court directed that the sum recovered in settlement of the action from a taxicab company for overcharges be applied to the reduction of cab fares for a specified period rather than directing that the recovery be distributed among members of the class on the theory that it is better for the money to benefit persons similar to those adversely affected than for it to be kept by the wrongdoer (Pooler, Consumer Law, NYLJ, June 19, 1975, p 1, col 1).
The central issue here involved which makes this matter ripe for class certification is a breach by defendant of its fiduciary duty to its customers. While defendant contends that no fiduciary relationship can be held to exist unless the circumstances surrounding the relationship of defendant and each of its customers is examined on a case-by-case basis, the relationship between a stockbroker and his customer is one of principal and agent (6 NY Jur, Brokers, § 29 et seq.). The broker, once he has received his customer’s funds, is a fiduciary with respect to those funds (Hanly v Securities & Exch. *945 Comm., 415 F2d 589, 596; Hughes & Co. v Securities & Exch. Comm., 139 F2d 434, 437, cert den 321 US 786; Opper v Hancock Securities Corp., 250 F Supp 668, 674-675; People v Mercer Hicks Corp., 4 Misc 2d 55, 58, affd 3 AD2d 708; Rolf v Blyth Eastman Dillon & Co., 424 F Supp 1021, 1036-1037). The obligation which a stockbroker owes to its customer with regard to advice and counsel in respect to investments is here immaterial. What is material is the broker’s possession of the funds belonging to the customer. After the investment is sold and funds belonging to the customer come into the broker’s possession, the broker may not consciously utilize this possession to the detriment of his customer and for his own benefit (cf. Meinhard v Salmon, 249 NY 458). In this context, the amount of time, interest and inclination which a particular customer has to look after his own investment (Avern Trust v Clarke, 415 F2d 1238, cert den 397 US 963) is immaterial.
Ill: TYPICALITY OF THE CLAIMS OF THE REPRESENTATIVE (CPLR 901, SUED A, PAR 3)
"The essence of the requirement of typicality * * * is that not only must the representative party have an individual cause of action but the interest of the representative must be closely identified with the interests of all other members of the class” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.09; Fed Rules Civ Pro, rule 23, subd [a], par [3]). Plaintiffs’ claims must not be antagonistic to or in conflict with the interests of other class members (Robertson v National Basketball Assn., 389 F Supp 867, 898-900; cf. Ross v Amrep Corp., 57 AD2d 99, 101, app dsmd 42 NY2d 910).
Plaintiff has sufficiently alleged injury in his own right in the cause of action set forth in the complaint (Weiner v Bank of King of Prussia, 358 F Supp 684, 690-696, and cases cited therein), and while the amount of his damages are stated to be presently unknown, specification of the amount of damages is not mandatory (Daukas v Shearson, Hammill & Co., 26 AD2d 526; Silvestris v Silvestris, 24 AD2d 247, 250; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3017:l). The amount of damage to plaintiff Gilman has been calculated by defendant to be I8V2 cents per day. While this damage is small, it is, nevertheless, real. The fact that plaintiff claims personal damage differentiates this case from Weitzman v Bache Halsey Stuart (NYLJ, Nov. 4, 1977, p 5, col 1).
*946 The bland assertion by Merrill Lynch that a New York check was available to plaintiff if he had requested it is insufficient to deny him standing (Senter v General Motors Corp., 532 F2d 511, 519-520, supra; Jenkins v United Gas Corp., 400 F2d 28, 30; Parham v Southwestern Bell Tel. Co., 433 F2d 421, 426; Weathers v Peters Realty Corp., 499 F2d 1197, 1201; Hackett v McGuire Bros., 445 F2d 442, 446). Reform after the fact does not moot questions already presented for review (Baxter v Savannah Sugar Refining Corp., 495 F2d 437, 442, cert den 419 US 1033; see, generally, United States v Grant Co., 345 US 629, 632-633; White v Mathews, 559 F2d 852, 856-857; Sosna v Iowa, 419 US 393, 402). Particularly is this true in the present case where the proposed remedy would be substantially as costly, or perhaps even more costly, than the evil complained of.
IV: FAIR AND ADEQUATE REPRESENTATION OF THE CLASS (CPLR 901, SUED A, PAR 4)
Under this prerequisite, two components must be considered: competence of counsel and the financial resources of the class representative (Weitzman v Bach Halsey Stuart, NYLJ, Nov. 4, 1977, p 5, col 1, supra; Vickers v Home Fed. Sav. & Loan Assn. of East Rochester, 87 Misc 2d 880, 892, mod on other grounds 56 AD2d 62; Fed Rules Civ Pro, rule 23, subd [a], par [4]; cf. Eisen v Carlisle & Jacquelin, 417 US 156; Herbst v Able, 47 FRD 11, 15, supra). The competence of plaintiffs counsel is attested to in plaintiffs papers and in the argument had before the court. Indeed, he is a man of wide experience in the field, with a reputation commensurate with that experience.
The remaining element, the financial resources of the representative and whether he will vigorously pursue the prosecution of this action presents a more subtle issue. From the pretrial deposition of plaintiff, it is apparent that he has sufficient means to pursue this lawsuit and he has the inclination as well. However, defendant contends that plaintiffs injury is so small and insignificant that no justification lies for allowing him to function as a class representative (Mandle v Coburn Corp. of Amer., 33 AD2d 761, mot for lv to app den 26 NY2d 612). It should be noted that Mandle was decided under a more restrictive class action statute (CPLR 1005, repealed by L 1975, ch 207, § 2, eff Sept. 1, 1975; see Moore v Metropolitan Life Ins. Co., 33 NY2d 304, 313) and while de minimis is *947 still the rule (Black’s Law Dictionary [4th ed], p 482), the total amount here sought is considerable. In contradistinction to Mandle (supra, p 672), where the court noted that the issue posed may not have been "of common or general interest to many other stockholders”, here, the sum involved is approximately $2,000,000, and, while the precise number of persons is unknown, deals with the issuance of more than 63,000 checks. Mandle may have been sound law in its time and circumstances (see Wagner v International Ry. Co., 232 NY 176, 182). However, in light of current thinking that the courts be made more accessible, the interpretation of CPLR article 9 must be given a reading consonant with that philosophy (Korn v Franchard Corp., 456 F2d 1206, 1214; Swanson v American Consumer Inds., 415 F2d 1326, 1333, supra; Hohmann v Packard Instrument Co., 399 F2d 711; Siegel v Chicken Delight, 271 F Supp 722, 725; 2 Weinstein-Korn-Miller, NY Civ Prac, par 901.07).
Indeed, in his memorandum approving CPLR article 9, Governor Carey noted that "This bill * * * will enable individuals injured by the same pattern of conduct * * * to pool their resources and collectively seek relief. By permitting common questions of law or fact affecting numerous persons to be litigated in one forum, the bill would result in greater conservation of judicial effort” (NY Legis Ann, 1975, p 426).
V: SUPERIORITY OF THE CLASS ACTION (CPLR 901, SURD A, PAR 5)
The final factor vests in the court the discretion to make a determination of the feasibility and desirability of permitting the action to proceed as a class action (Matter of Shook v Lavine, 49 AD2d 238, 243). Were this suit one against a public officer and solely for injunctive relief, the rule of stare decisis would achieve, through a single plaintiff, all that could be achieved through a class action (Matter of Jones v Berman, 37 NY2d 42, 57; Brito v Ross, 53 AD2d 414, mot for lv to app granted 40 NY2d 808; Matter of Shook v Lavine, supra). However, this suit is not against a public officer, nor is it limited to injunctive relief. Substantial damages are sought. "A critical fact in this litigation is * * * [plaintiff’s] individual stake in the damages award he seeks * * * No competent attorney would undertake this complex * * * action to recover so inconsequential an amount. Economic reality dictates that *948 [plaintiff’s] suit proceed as a class action or not at all” (Eisen v Carlisle & Jacquelin, 417 US 156, 161, supra).
Clearly, in this case "a class action is superior to any other available method for the fair and efficient adjudication of the issues presented by the various plaintiffs * * * before the Court [which] would be too small to justify legal action by a plaintiff on his own behalf. * * * [T]he maximum damages recoverable by any single plaintiff would be at most * * * hardly enough to enable him to conduct to completion the protracted and complicated litigation required to establish his claim” (Berland v Mack, 48 FRD 121, 128, supra; see, also, Siegel v Chicken Delight, 271 F Supp 722, supra; Fischer v Kletz, 41 FRD 377, 385; Weiss v Tenney Corp., 47 FRD 283, 291; cf. Dolgow v Anderson, 53 FRD 664, affd 464 F2d 437).
vi: (cplr 902)
The prerequisites of CPLR 901 having been met, CPLR 902 is now triggered. It provides five illustrative considerations to be weighed before finally determining whether the court’s discretion should be invoked to permit maintenance of the action as a class action (Seligman v Guardian Life Ins. Co. of Amer., 59 AD2d 859; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C902:l; Fed Rules Civ Pro, rule 23, subd [b], par [3]). Most of these considerations are implicit in CPLR 901 and have hitherto been discussed (2 Weinstein-Korn-Miller, NY Civ Prac, par 902.04).
Additionally, it should be noted that the choice of forum is appropriate, considering the significant contacts of the interested parties with this jurisdiction, the availability of witnesses and evidence here, and the fact that New York is this country’s financial capital (see Robertson v National Basketball Assn., 389 F Supp 867, 902-903, supra; 3B Moore, Fed Prac [2d ed], par 23.45 [4.-3]; Fed Rules Civ Pro, rule 23, subd [b], par [3]; subd [c]). There is no indication of the pendency of any other related case, and a single action will avoid duplication of effort and potentially inconsistent judgments (see Robertson v National Basketball Assn., 413 F Supp 88).
Manageability should not be equated with sheer numbers.* *949 Rather, it should be considered together with the definition of the class and notice. Proper notice should breed efficient management (Eisen v Carlisle & Jacquelin, 417 US 156, 179-186, supra, Douglas, J., concurring).
A final word is appropriate. Unless a class action is permitted, the rights of Merrill Lynch’s customers are not likely to be redressed and the court, by default, will have placed its imprimatur on a practice which, at the least, should be the subject of careful and painstaking litigation. If the practice is wrong, if it represents the breach of a fiduciary relationship, it ought be stopped. Public policy demands that the practice be subject to judicial scrutiny. However, it can be subject to such scrutiny only if some litigant brings the issue before the court. A litigant would be foolhardy indeed to invest the many thousands of dollars necessary to litigate the matter in light of the comparatively small return. If the rights of the customers of Merrill Lynch are to be vindicated, the only vehicle for accomplishing this result is the class action.
Counsel will arrange for a conference to be held in chambers for the purpose of defining the class and determining the form of notice and content thereof, and for determining whether any members of the class should be permitted to opt out.

 To illustrate, School Dist. of Philadelphia v Harper & Row Publishers (267 F Supp 1001) is sometimes cited for the proposition that a large class is unmanageable. There the class involved some 60,000 school districts and other public agencies alleging price *949 fixing by publishers. The court, fearful of the practical difficulties of management, held conventional adjudication plus intervention by interested class members to be superior. It is true, however, that the interest of each claimant was large, not small, making conventional adjudication feasible. However, the case was eventually consolidated with others in a different district, where it was in fact allowed to proceed as a class action. (See, also, Kohn v Royall, Koegel & Wells, 59 FED 515, app dsmd 496 F2d 1094.)