OPINION OF THE COURT
Martin B. Stecher, J.
The plaintiff moves for an order approving the proposed settlement of a class action and rejecting the report of the Special Referee, who recommends against the settlement. The defendant joins in the motion.
Plaintiff, a New York resident, was a securities brokerage customer of Merrill Lynch, Pierce, Fenner & Smith, Incorporated (Merrill Lynch). Merrill Lynch transmitted the proceeds of the transaction to the plaintiff in New York by a check drawn on a California bank. Plaintiff brought this action in his own behalf and in behalf of others similarly situated for *656 an injunction and an accounting alleging that Merrill Lynch had adopted a policy of paying New York customers with checks drawn on banks outside New York State, with the object of securing for itself one or more days’ additional use of the client’s money.
Justice Bloom granted class action status (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941), the class consisting of all brokerage customers of Merrill Lynch who, at any time since September 1, 1976, maintained accounts at Merrill Lynch offices located within the State of New York and who were issued checks by Merrill Lynch for the proceeds of security transactions drawn on banks located outside the State.
The plaintiffs attorneys and Merrill Lynch have reached a proposed settlement: Merrill Lynch will discontinue cross-country checking (Merrill Lynch says that, in anticipation of the settlement, it has already done so), and will pay to plaintiffs attorneys fees of $55,000. The proposed settlement provides for no payment to the class.
The Special Referee to whom the proposed settlement was referred recommends against its approval, principally because no member of the wronged class obtains a recovery and the party who committed the alleged wrong retains the proceeds of the wrong.
In asking the court to disaffirm the Special Referee’s report, the plaintiff emphasizes that he has gained the essential relief he sought — the halting of the out-of-State check delay practice.[1] He asserts that Merrill Lynch’s liability is uncertain and that the establishment of damages is even more difficult: there were over 350,000 customers; the damage to each customer will depend on when he received his check, whether he deposited it at once, the time it took to clear, whether he received interest from his own bank from the day of deposit, and that the average recovery for each customer would be less than a dollar.
I do not disapprove of the fee sought by plaintiffs attorneys and I have given consideration to the attorneys’ recommendation that the settlement be approved. I recognize that injunc *657 tive relief, without a monetary payment, may sometimes be an adequate settlement of a class action. But not in this case.
The liberalized class action statute (CPLR art 9) was adopted in 1975 and was patterned after "the general scheme of the Federal Rule” (Twelfth Ann Report of NY Judicial Conference, 1975, p 206). According to the Court of Appeals, Second Circuit (Eisen v Charlisle & Jacquelin, 391 F2d 555, 560, quoted in 2 Weinstein-Korn-Miller, NY Civ Prac, par 901.01), "Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.”
The injunction, if that is the sole relief, will only benefit those members of the class who continue to do business with the defendant. To require the class to continue in such relationship in order to receive the benefit makes the "benefit” dubious indeed.
Further, I believe that the plaintiffs attorneys have overestimated the difficulties of their case. Merrill Lynch concedes that, with the intention of making a profit for itself, it adopted a policy of paying its New York customers with checks drawn on a California bank. Although it estimates its profits from that practice at "only” $278,000, others have estimated that it profited to the extent of $2 million in 1977 alone (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941, 942, supra).
In the class certification decision (Gilman v Merrill Lynch, Pierce, Fenner & Smith, supra, p 945), Justice Bloom held that Merrill Lynch, as an agent, had no right to make a profit by use of its principals’ moneys: "After the investment is sold and funds belonging to the customer come into the broker’s possession, the broker may not consciously utilize this possession to the detriment of his customer and for his own benefit (cf. Meinhard v Salmon, 249 NY 458).”
I am not persuaded by the agreement that damages can be ascertained only by determining when each customer received his check, whether he cashed it or deposited it at once, whether the bank in which he deposited it gave him interest from the day of deposit, etc. The plaintiff may not and does not contend that Merrill Lynch is liable for profits resulting *658 from the customer’s delay in depositing a check once received. Nor is it of significance what interest arrangement, if any, the customer had with his own bank. Merrill Lynch can be held liable, in this action, only to the extent it benefited from its own breach of trust.
In emphasizing the problems of proving each customer’s damage, the parties are overlooking the obvious: the customers’ damage is the reverse image of Merrill Lynch’s profit. There appears to be little difficulty in proving that profit. Merrill Lynch has given the court its own figures: An examination of Merrill Lynch’s records reveal that a total of 364,473 checks and approximately 1.25 billion dollars were remitted to Merrill Lynch’s New York State customers by means of checks drawn on BANTSA (Bank of America N.T. & S.A. in San Francisco). It estimates, whether or not accurately, that it benefited to the extent of about 70 cents per check. Proof of damages need not be mathematically exact. As was said in Tobin v Union News Co. (18 AD2d 243, 245-246): "A reasonable basis for the computation of approximate result is the only requisite (Eastman Co. v. Southern Photo Co., 273 U.S. 359, 379; Duane Jones Co. v. Burke, 306 N. Y. 172, 192; Mills Studio v. Chenango Val. Realty Co., 15 A D 2d 138; Slater v. Kane, 275 App. Div. 648; 15 Am. Jur., Damages, §21, pp. 412-413; Restatement, Contracts, § 331).” (See, also, Randall-Smith v 43rd St. Estates Corp., 17 NY2d 99, at pp 105-106.)
There should be no difficulty in estimating the number of days each dollar remained outstanding by reason of this activity and the rate which the defendant paid for the use of money during those periods. Nor should there by any difficulty in discovering, from the defendant’s computerized bookkeeping systems, how many dollars were paid to each customer in this fashion during the period in question.
Merrill Lynch’s argument that, because its customers knew from the face of the checks that they were drawn on a California bank, they ratified Merrill Lynch’s actions by accepting the checks is meritless. It can hardly be expected that a customer, receiving an already-delayed check, would cause further delay by returning the check to demand one drawn on a New York bank. The wrong done was the intentional delay; the suggested remedy of further delay hardly warrants attention.[2]
*659 Finally, it is suggested in the papers submitted and in related cases that it is commonplace for corporations such as Merrill Lynch to pursue a check delay program. The loss to each customer is trivial, but the aggregate profit to the corporation may be large. A complaint in such a matter can be prosecuted, economically, only as a class action. In view of the allegedly widespread practice the propriety of the practice should be judicially determined.
The motion to approve the settlement and to disaffirm the Referee’s report is denied.

. Despite assurances that Merrill Lynch, in anticipation of the court’s approval, had discontinued the practice, it is alleged that it is still sending its New York customers checks drawn on a California bank for dividend and interest payments.

. The proposed judgment provides in subdivision (b) (2) that "Merrill Lynch shall (n. contd.) *659 not, beginning on the date of said order and judgment, issue any check for the proceeds of a securities transaction to any customer of any Merrill Lynch office located in the State of New York drawn on a bank which is located without the State of New York and which is not a member of the Federal Reserve system”. Under such a provision, Merrill Lynch could still issue to its New York customers checks drawn on a California bank which is a member of the Federal Reserve System. The parties disavow any such intention. In view of the determination, however, the language of the decree proposed is not presently significant.