OPINION OF THE COURT
Peter Fox Cohalan, J.
These proceedings were brought by the Attorney-General of *629 the State of New York on behalf of the Department of Health (hereinafter referred to as DOH) and by Gail Eileen Strouse (hereinafter referred to as Strouse), an individual plaintiff and patient, of Dr. Philip Feldman, D.D.S. in connection with the highly publicized and reported death of Dr. Feldman from Acquired Immune Deficiency Syndrome (AIDS).
Philip Feldman was a licensed dentist who maintained a general dental practice located at 1850 Route 112 in Coram, Suffolk County on Long Island, New York. On June 18, 1991 Dr. Feldman was admitted to Stony Brook University Hospital where he subsequently died on June 19, 1991 at 3:35 a.m. The immediate cause of death was pneumonia, but it was also highly publicized and widely reported in the media that Dr. Feldman was infected with the Human Immuno Deficiency Virus (HIV) and suffering from AIDS resulting in his death. It is alleged that the State Department of Health has reviewed Dr. Feldman’s death certificate which confirmed the HIV infection but nothing other than that statement has been offered by DOH to the court to establish this fact as so.
As a result of the death of Dr. Feldman the DOH established a hotline on July 14, 1991 for patients of Dr. Feldman and the DOH received more than 800 calls and more than 540 former or current patients of Dr. Feldman were tested for HIV transmission and infection. The DOH, as expressly authorized by law, also intended to initiate an epidemiological study of Dr. Feldman’s patients and pursuant thereto, caused to be issued subpoenas dated July 30, 1991 directed to the administrator of Dr. Feldman’s estate for the production on August 2, 1991 before the Director of the AIDS Epidemiology Program (a) all patient records after January 1, 1987; (b) all appointment calendars and logs and; (c) all billing records. The respondent in this action, the administrator of Dr. Feldman’s estate (hereinafter referred to as Feldman), through their attorneys O’Brien, McGarry, Murtagh and Mayr have refused to comply with the subpoena for the production of Dr. Feldman’s dental records upon the grounds of physician-patient privilege and the confidentiality requirements of Public Health Law article 27-F relating to HIV- and AIDS-related information.
Petitioner DOH now moves pursuant to CPLR 2308 (b) and Public Health Law § 206 (4) (a) for an order of this court compelling the respondent Feldman to comply with the subpoena duces tecum dated July 30, 1991 for the production of *630 the specified dental records to be produced before Dr. Perry E. Smith, Director of the AIDS Epidemiology Program. Petitioner argues that Public Health Law § 206 (1) (d) and (j) authorize the Commissioner of the Department of Health to protect the "health and life of people of the state” and he is expressly empowered and authorized by law to issue subpoenas during the conduct of an investigation. Respondent in opposition to the motion claims that the dental records sought are subject to the physician-patient privilege and thus may not be disclosed without the consent of the patient whose records are sought. Respondent further argues that the New York Legislature specifically provided for procedures for an investigation into HIV- and AIDS-related information in article 27-F (§§ 2780-2787) and before there may be court-ordered disclosure, there must be proof of a "clear and imminent danger to the public health”. (Public Health Law § 2785 [2] [c].)
Petitioner counters these arguments and states that the privilege does not apply, stringent confidentiality requirements are imposed by statute and article 27-F dealing with AIDS-related information is not applicable since respondent makes no showing that the patient records contain such information. Petitioner further argues that the claim of a mere chance or possibility of confidential HIV-related information may be contained within the proposed dental records could apply to any medical records and would result in article 27-F applying to all cases where access to medical records was sought, a purpose not intended or contemplated when article 27-F of the Public Health Law was enacted by the Legislature of the State of New York.
There is also an accompanying application by an individual plaintiff and former patient of Dr. Feldman, Gail Eileen Strouse, in a separate tort action under index No. 14249/91 against the Feldman estate which seeks intervention in, and consolidation with, the DOH action; access to patient records; the designation, pursuant to CPLR article 9 of all claims and proceedings against defendant, Feldman, as a class action with the named plaintiff, Strouse, as a representative of the proposed class action.
For the reasons outlined below, petitioner’s motion to compel compliance by respondent of the subpoena duces tecum dated July 30, 1991 for the patient data demanded is hereby granted and respondent is directed to turn over (1) all treatment records on all patients after January 1, 1987; (2) all *631 appointment calendars and logs and; (3) all billing records as requested. Such documentation and patient data is to be turned over within five days of service of a copy of this order and memorandum decision. Plaintiff Strouse’s motion to intervene and consolidate her action with the DOH action is denied, as is her requested relief for designation of a class action and her appointment as representative of the class.
I
Public Health Law § 206 (1) provides that the Commissioner of the State Department of Health, pursuant to his general powers and duties, is authorized to:
"(d) investigate the causes of disease, epidemics, the sources of mortality, and the effect of localities, employments and other conditions, upon the public health * * *
"(j) cause to be made such scientific studies and research which have for their purpose the reduction of morbidity and mortality and the improvement of the quality of medical care through the conduction of medical audits within the state. In conducting such studies and research, the commissioner is authorized to receive reports on forms prepared by him and the furnishing of such information to the commissioner, or his authorized representatives, shall not subject any person, hospital, sanitarium, rest home, nursing home, or other person or agency furnishing such information to any action for damages or other relief Such information when received by the commissioner, or his authorized representatives, shall be kept confidential and shall be used solely for the purposes of medical or scientific research or the improvement of the quality of medical care through the conduction of medical audits” (emphasis added).
 To assist the Commissioner in exercising these general powers to protect the public health, the State Legislature provided in Public Health Law § 206 (4) (a) that the Commissioner of DOH may "issue subpoenas * * * in any matter or proceeding before him” and it is this grant of authority under which the State seeks the compliance of respondent in turning over the patient data requested, notwithstanding any claims by respondent of a physician-patient privilege. Respondent asserts both the physician-patient privilege contained in CPLR 4504 (a) and the confidentiality required under article 27-F dealing with HIV- and AIDS-related information. Both these arguments are without merit.
*632 CPLR 4504 (a) provides that confidential information is privileged and states: "Unless the patient waives the privilege, a person authorized to practice * * * dentistry * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
However, the physician-patient privilege is a purely statutory creature, in derogation of the common-law rule that a physician could be compelled to disclose information acquired in the treatment of a patient and thus must be strictly construed. (Matter of People v Doe, 107 Misc 2d 605 [1981] [hospital investigation].) The privilege while serving an important social function, is not absolute, and must yield in certain instances, especially where the Legislature has abrogated the privilege to effectuate an overriding public policy. (See, Matter of Camperlengo v Blum, 56 NY2d 251 [1982].)
The New York Court of Appeals in Matter of Levin v Murawski (59 NY2d 35 [1983]) recognized that the privilege was not absolute and that the practice of medicine is subject to regulation by the State under its broad police powers and that authorization could be found to obtain patient records for purposes of investigation of a physician or dentist, notwithstanding the confidential physician-patient privilege.
However, while the clear import of Public Health Law § 206 (4) (a) gives petitioner the authority to issue subpoenas, it must still meet the minimum threshold foundation to support its issuance. The court in Matter of Abrams v Thruway Food Mkt. & Shopping Center (147 AD2d 143, 146 [2d Dept 1989], citing Matter of Levin v Murawski, supra) held: "It is well established that the requisites for an investigatory subpoena duces tecum such as that at bar, are (1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry”.
Here, in the instant matter, petitioner has established its authority to engage in this investigation and issue the subpoenas in question pursuant to Public Health Law § 206 (1) (d), (j) and (4) (a); there is an authentic factual basis to warrant the investigation considering the allegations of an infected health care worker and lack of proper infection control procedures; and the evidence sought, being patient identification and records, is related to the inquiry. (Matter of Axelrod, 99 AD2d 531 [2d Dept 1984].)
*633 The physician-patient privilege contained in CPLR article 45 cannot act as an absolute bar to prevent the DOH from obtaining patient records for purposes of investigation of a physician. (Matter of A-85-04-38, 138 Misc 2d 786 [1988].) Furthermore, it seems disingenuous that the representative of a deceased HIV-infected health care worker would raise the spector of privilege and confidentiality on behalf of his patients in an attempt to defeat the petitioner’s application which seeks as its goal the protection of those patients and to contact, inform, test and deed with a serious public health issue, namely, former patients of Dr. Feldman possibly subjected to HIV infection due to poor infection control techniques practiced by this deceased HIV-positive dentist.
Respondent also argues that Public Health Law article 27-F dealing with HIV- and AIDS-related information acts as a bar to the release of the patient records demanded by petitioner. This argument is also without merit. Public Health Law article 27-F and § 2782 in particular, dealing with the confidentiality requirements of HIV- and AIDS-related information, are not applicable to the facts of this case. Petitioner does not seek HIV information, only patient records, and there is no showing that the release of such patient records to petitioner would also concomitantly result in the release of HIV- and AIDS-related information of a patient. To hold otherwise would result in a doctrine of inviolatability of access to medical records on the off chance that a record may contain HIV-related information and a doctor’s right to deny access at all times citing to article 27-F. Second, Public Health Law § 2782 (g) specifically provides disclosure may not be made except to a "federal, state, county or local health officer when such disclosure is mandated by Federal or State law” (emphasis added) such as that previously discussed heretofore with respect to petitioner’s mandate under Public Health Law § 206 (1) (a), (d) and (j); and finally under Public Health Law § 206 (1) (j); it provides that "Such information when received by the commissioner, or his authorized representatives, shall he kept confidential and shall be used solely for the purposes of medical or scientific research” (emphasis added).
Therefore, the documents sought by petitioner pursuant to its mandate under Public Health Law § 206 already provide that said patient information is confidential and defeats any claim by respondent that petitioner’s access to these patient records would violate the confidentiality of possible HlV-posi *634 tive or AIDS-related information of a patient suffering from this disease.
While the court has found petitioner to have established the validity of the subpoena duces tecum and the authority to issue it to warrant compliance by respondent for the turnover of the patient information sought, this case points up the deficiencies of the State’s actions in dealing with HIV-infected health care workers. Thus, it is clear that the State, under the guise of confidentiality, privilege and secrecy has abdicated its responsibilities and duties to protect the health, safety and welfare of its citizens with a cogent policy which balances the needs for confidentiality with the needs of the general good for protection from an HIV-infected health care worker. As this case demonstrates, the State is reacting to events involving Dr. Feldman and his HIV-positive health status after the fact as opposed to taking the lead with a safe, effective policy dealing with HIV-infected health care workers to protect the public health. Legislation, regulation and direction need to be taken to implement a rational policy dealing with these issues of infected HIV-positive or AIDS health care workers in order to protect the general public health. While this court does not presume to have all the answers in solving this crisis in our health care industry, if the State through its licensing power can regulate who may practice health care under its authority to protect the public health, it also should undertake the responsibility to ensure the general good and public health with a policy dealing with the HIV-infected or AIDS-suffering health care worker.
It seems the antithesis of an open and free democratic society to require and strive for more openness in the presentation of ideas and in government (i.e., Freedom of Information Law, etc.) while at the same time deprive that society of its right to know the most basic underpinning of a free and open society — information—such as that with respect to the possible communicability of a fatal disease as it relates to an infected health care provider. If the State deems it to be in the public interest to support a public policy which maintains the confidentiality of the HIV-infected health care worker from his patients, then it is incumbent upon the State to adopt a policy by which the State would know who is an infected health care worker* to ensure that such HIV-infected *635 health care worker is practicing proper infection control techniques and refraining from high risk medical or dental procedures which by their very nature increase the risk of HIV transmission to a patient. A failure to adopt a cogent and rational policy to deal with issues concerning HIV-infected New York health care workers is to ensure a repeat of the State’s actions in this case; a mad scramble to locate any and all patients of the infected dentist or doctor to determine if infection or transmission has occurred and thus possibly doom a citizen of this State to a repeat of the Kimberly Bergalis story which occurred in Florida. On the other hand, the adoption of a rational policy will ensure the public health and inspire confidence by the citizens of this State in the health care system and its health care providers.
II
Accompanying the special proceeding brought by the petitioner DOH for access to the patient data of Dr. Feldman is a motion by a former patient of Dr. Feldman, Gail Eileen Strouse, who having instituted a tort action against defendant-respondent based upon his HIV-positive status, now seeks to intervene in and consolidate her action with the State’s special proceeding; and she further seeks to have her action designated and certified as a class action and to appoint plaintiff as a named representative of the class. These motions are denied.
CPLR 602 (a) dealing with consolidation provides: "When actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any and all the matters in issue, may order the actions consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”
The power to order consolidation rests in the sound discretion of the court and is appropriate where it involves common questions of law and fact. (Mideal Homes Corp. v L & C Concrete Work, 90 AD2d 789 [2d Dept 1982].) However, consolidation is inappropriate where case resolution involves different factual issues and legal claims. (Pau v Bellavia, 145 AD2d 609 [2d Dept 1988].)
Here, in the instant matter, petitioner’s special proceeding to enforce a subpoena duces tecum is sufficiently dissimilar on both the law and the facts to warrant the denial of *636 plaintiff’s requested relief. Petitioner seeks access to patient data under its inherent authority to protect the public health and study the epidemiological nature of an epidemic of HIV. Thus as previously pointed out, the facts and legal arguments deal with the validity of its subpoena power and the authority under which it was issued. Plaintiff Strouse, on the other hand, is prosecuting a tort action involving issues of proving liability, proximate cause, causality and damages. Thus the legal issues and facts underlying its support are not suitable for consolidation. Even while these two lawsuits on their surface arise out of the same transactions and fact patterns involving Dr. Feldman’s HIV-infected status, the proof with respect to each lawsuit is different and does not overlap; therefore, the identity of facts is insufficient to merit consolidation or joinder. (Aluminum Mill Supply Corp. v Skyview Metals, 117 AD2d 765 [2d Dept 1986].) Accordingly, that branch of plaintiff’s motion seeking to intervene and consolidate her action with the action instituted by the DOH is denied.
Plaintiff Strouse also seeks class certification of her tort action pursuant to CPLR article 9 and to be designated as a representative plaintiff of "all those others so unfortunate as to be at risk of becoming ill, suffering the ravages of disease and meeting untimely death as a result of professional services performed” by Dr. Feldman.
CPLR 901 (a) sets forth five mandatory procedural prerequisites which must be met for maintaining an action by a representative party on behalf of a class. They are listed as:
"(1) the class is so numerous that joinder of all members * * * is impracticable;
"(2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"(3) the claims and defenses of the representative part[y, plaintiff Strouse,] are typical of the claims or defenses of the class;
"(4) the representative part[y] will fairly and adequately protect the interest of the class; and
"(5) a class action is superior to other available methods for the fair adjudication of th[is] controversy.”
The court must also consider the five factors enumerated in CPLR 902 which are illustrative, though not exhaustive, for maintenance of a class action but consideration of those *637 requirements under CPLR 902 are not triggered until the five prerequisites of CPLR 901 (a) have been met. (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941; 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 902.06; Siegel, NY Prac § 142 [2d ed].)
Plaintiff has the burden of establishing that each of the class action prerequisites of CPLR 901 (a) and 902 have been satisfied not by mere repetition of the rule but with a sufficient factual basis to meet the rule’s requirements. (Brandon v Chefetz, 121 Misc 2d 54 [1983], appeal dismissed 106 AD2d 162 [2d Dept 1985]; Cannon v Equitable Life Assur. Socy., 106 Misc 2d 1060 [1981], affd in part and revd in part on other grounds 87 AD2d 403 [2d Dept 1982].) Here, in the case at bar, the court need not consider the factors enunciated in CPLR 902 because plaintiff Strouse has not even proven her burden of establishing to the satisfaction of this court that the prerequisites of CPLR 901 (a) have been met. Plaintiff has not established numerosity, predominance, typicality, adequacy and superiority to warrant class certification.
Plaintiff’s claims for class certification rest on her claims that Dr. Feldman, while knowingly infected with the AIDS virus, practiced dentistry and therefore put his patients at risk to the possible transmission of the HIV virus from health care provider to patient. However, in this regard, the court is confronted with questions involving dental procedure, causality, proximate cause, injury, if any, which tend to suggest class action is not the superior method.
CPLR 901 (a) (1) requires that plaintiff prove that the proposed class "is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable”. However, there has been no showing that other patients of Dr. Feldman share in plaintiff’s concerns or phobia for possible risk of transmission of the HIV virus which causes AIDS. Most medical authorities consider the risk of transmission to be remote. Be that as it may, it is clear that the membership in the proposed class is affected and determinative of how many visits a patient may have made, what dental procedure was performed, how intrusive the procedure was, what infection control procedures were practiced, etc. Clearly, a patient of defendant who may have been seen for only a checkup or X rays does not run the same risk as the patient who had root canal or tooth extraction. In the absence of any proof or attempt to document the existence of a prospective class, to ascertain how and which persons would comprise the class *638 sought to be represented or to show whether indeed any of the other patients of Dr. Feldman have been injured by him is indicative of plaintiff’s failure to factually demonstrate that the purported class exists. (Scott v Prudential Ins. Co., 80 AD2d 746 [4th Dept 1981].)
CPLR 901 (a) (2) requires that plaintiff prove that there are common issues of law or fact which predominate over questions pertaining to individual members. Class certification is not favored in mass tort actions not only because damages would be individual to each of the proposed class member’s case, but causality, proximate cause, knowledge and proof would also be individual to each member as well. (Robertson v Smalis Painting Co., 134 AD2d 881 [4th Dept 1987]; Rosenfeld v Robins Co., 63 AD2d 11 [2d Dept 1978]; Snyder v Hooker Chems. & Plastics Corp., 104 Misc 2d 735 [1980]; see also, Dickerson, Article 9, Class Actions: A Review, NYLJ, Jan. 4, 1990, at 1, col 1; but see, Schreibman v Linn, 69 AD2d 800 [1st Dept 1979] [a medical malpractice lawsuit which takes a contrary position to the general rule dealing with mass tort claims].)
Here, in the case of the actions of Dr. Feldman putting at risk the health of his patients, each is an individual matter dealing with issues of how regular a patient each was, the number of visits, dental procedures performed and other "risk behavior” factors which would not or may not be common to each of them. Causality and proximate cause would require individual investigation and proof as to the risk factors practiced with each individual patient and the dental procedures performed over what period of time and thus do not easily lend themselves to issues of commonality or predominance to warrant class certification. As the court dealing with a mass tort property damage case observed in Petrosino Seafood Corp. v Consolidated Edison Co. (97 Misc 2d 110, 113 [1978], quoting Dennis v Long Is. Light. Co., 78 Misc 2d 400, 403): " 'As a matter of law, however, separate wrongs to separate persons, even if pursuant to a common plan do not alone create a common or general interest.’ ”
The predominance of individualized questions of fact dealing with causality, proximate cause and injury, notwithstanding the one question each patient has in common, namely, Dr. Feldman’s HIV-positive status as an AIDS sufferer, does not create a sufficient basis to warrant class certification at this time.
*639 As to the third prerequisite, CPLR 901 (a) (3) requires that the claims of the representative plaintiff Strouse be typical of the claims of the class. While this does not mean that the claims of the plaintiff must be identical to those claims or the other members of the proposed class, they must be substantially similar and sufficiently coextensive interests. (Vickers v Home Fed. Sav. & Loan Assn., 62 AD2d 1171 [4th Dept 1978].)
However, in the case at bar, plaintiff has failed to show that her claims are typical of the class she seeks to represent. At this time, she claims to have tested negative for HIV and claims to suffer fear, anxiety and distress as a result of the discovery that they (she and the proposed class) are at risk of infection with HIV. However, there is nothing in her papers to suggest that her claim is anything other than her individual fear of the risk of HIV infection and AIDS. Plaintiff’s fear or phobia of the risk of transmission of the AIDS virus from Dr. Feldman to her during her dental treatment is actually unique to her and may not be shared by other patients of Dr. Feldman. This may be due to the fact that other patients of Dr. Feldman may have been aware of his HIV status as reported, the dental procedure was minor or unintrusive or Dr. Feldman, in individualized cases, may have practiced safe, effective infection control techniques which minimized the impact of a risk of transmission.
For whatever reason and there are a myriad of reasons to choose from, plaintiff has failed to satisfy her burden of establishing that her complaints and fears about AIDS and the risks of transmission are typical and shared by a whole class of other patients of Dr. Feldman to warrant class certification. (Katz v NVF Co., 100 AD2d 470 [1st Dept 1984]; Gottlieb v March Shipping Passenger Servs., 67 AD2d 879 [1st Dept 1979].)
Finally, without having to deal with the adequacy issue of CPLR 901 (a) (4), the superiority requirement of CPLR 901 (a) (5) provides that a plaintiff seeking class certification must demonstrate that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "The essence of this requirement * * * is that in every instance where class treatment is sought, the proponent of the class must persuade the court that the provisions of Article 9 will serve their appropriate function in the particular situation and that the class suit is the best method of vindicating the rights of the members of the class.” (2 Weinstein-Korn-Miller, NY Civ Prac ¶ 901.19.)
*640 For the reasons as previously outlined above, with regard to the complex and myriad factual bases upon which liability is claimed with its inherent difficulties and individualized approaches to issues of causality, proximate cause, injury and damages, plaintiff has failed to prove or convince this court that class certification under CPLR article 9 is the superior method in dealing with her claim as representative of a class described as former patients of Dr. Feldman. Accordingly, plaintiff’s motion for class certification is denied.
For the reasons previously stated herein, and upon all the papers submitted in support of and in opposition to the motions by petitioner and plaintiff and after due consideration by the court, petitioner’s motion to compel compliance with the subpoena duces tecum by respondent is hereby granted and plaintiff’s motion to consolidate, intervene and for class certification is hereby denied.

 Since Public Health Law article 27-F and § 2782 already require confidentiality of all HIV-related information, this information would fall under those confidentiality requirements.