Richard J. CUSICK, on behalf of himself
and all others similarly situated

v.

N. V. NEDERLANDSCHE COMBINATIE
VOOR CHEMISCHE INDUS-
TRIE et al.

Civ. A. No. 68–2457.

United States District Court,
E. D. Pennsylvania.

Sept. 22, 1970.

Aaron M. Fine, Dilworth, Paxson, Kalish, Kohn & Levy, and David Berger, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for plaintiff.

K. Robert Conrad, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants Mead Johnson & Co. and Bristol-Myers Corp.

Bernard J. Smolens, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Rexall Drug and Chemical Co.

Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants Charles L. Huisking & Co., Inc., and S. S. T. Corp.

Richard G. Schneider, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant R. W. Greeff & Co.

S. Gerald Litvin, Philadelphia, Pa., and Davis & Davis, New York City, for defendant Walker Chemicals.

## OPINION AND ORDER

WOOD, District Judge.

This is a motion for an order pursuant to Rule 23(c) (1) declaring that this case may be maintained as a class action. The complaint, which is similar to a prior criminal indictment returned against most of the defendants by a grand jury in New York in 1968, United States of America v. N. V. Nederlandsche Combinatie Voor Chemische Industrie, et al., No. 68–CR 870 (S.D.N.Y.1968), alleges that the named foreign and domestic business entities conspired to monopolize the quinine and quinidine products industry by engaging in a variety of illegal practices including price-fixing, allocation of territorial markets, and allocation of the supply of raw material. It is further alleged that the conspiracy continued from 1958 through 1966, and that during this period the price of quinine and quinidine products increased severalfold.

Plaintiff seeks to represent a class consisting of "all users of quinidine for heart ailments, comprising about a quarter of a million people throughout the United States * * *" (Complaint, ¶ 3). In an effort to resolve what we consider the complex and far-reaching issues presented by this motion, we have heard argument on two occasions, and entered two orders directing the parties to provide specific documentary information on a number of issues. (Orders of March 19, 1970, and July 14, 1970). Both parties have provided extensive briefing on a number of the legal issues involved.

However, since the time when such hearings were held and briefs submitted, we have decided a number of the issues presented here in a similar context in our Opinion and Order entered on August 19, 1970, in Sol S. Turnoff Drug Distributors, Inc. v. N. V. Nederlandsche Combinatie Voor Chemische Industrie et al. (Civil Action No. 69–1883, —— F.R.D. ——, in which we tentatively permitted the plaintiff to maintain a similar action on behalf of a wholesaler-retailer class against the defendants named in

this action. We will not burden the record by repeating our discussion of those issues here, but our conclusions are the same: (1) The defendants here and in *Turnoff* have contended that the plaintiff should be precluded from maintaining a class action because at this point he has not shown a probability of success on the merits; we conclude here as in *Turnoff* that it is sufficient at this point to sustain a class action that the "plaintiff's claim of conspiracy may have merit and is a genuine issue in this litigation." Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968).[1] (2) The defendants here and in *Turnoff* have contended that a class action cannot be maintained even assuming that a conspiracy could be proved, because in light of the decision of the Supreme Court in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 224, 20 L.Ed.2d 1231 (1968), the plaintiff's class is as a matter of law too remote from any injury flowing from the conspiracy to recover damages; we conclude here as we did in *Turnoff* that "the determination whether there is a proper class does not depend on the existence of a cause of action", Kahan v. Rosenstiel, 424 F.2d 161, p. 169 (3 Cir. 1970), and that such contentions which relate to the legal possibility of recovery are properly made pursuant to Rule 56 or Rule 12(b) (6), not Rule 23;[2] (3) Here as in *Turnoff* the defendants have contended that there are no common issues of fact or law common to the members of the class which predominate over any questions affecting individual members; we conclude here as we did in *Turnoff* that "as in the normal antitrust case, proof of the conspiracy will present predominant questions of both law and fact." State of Minnesota v. United States Steel Corporation, 44 F.R.D. 559, 572 (D.C.Minn. 1968).[3] Finally, here as in *Turnoff* we will not approve the sending out of no-

tices until any preliminary motions have been disposed of and until the defendants have had the opportunity, if they desire it, to challenge the substantiality of the plaintiff's case. *Cf.* 3A Moore's Federal Practice, ¶ 23.45[3].[4]

■■ At the same time, there are questions in this case relating to notice and manageability which were not present in *Turnoff*. Rule 23(c) (2) provides that in any class action maintained under (b) (3):

> "The court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

The notice mandated by this provision is designed to fulfill the requirements of due process to which the class action procedure is of course subject, *Cf.* Notes of Advisory Committee on the Rules; Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). What constitutes adequate notice depends upon the particular circumstances of a given case. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); See also Wright, Federal Courts, § 72 and cases there cited.

Plaintiff here seeks to represent a class composed of a group of consumers whom he cannot at this time identify with precision. The means of notice which he proposes must of necessity rely largely on publication. For instance, he suggests notice to doctors through medical journals, publication in newspapers, and direct notice to the doctors who would have been most likely to prescribe quinidine drugs to their patients.

In order to determine what method of notice is required under these circum-

---

1. *Cf.* discussion at pp. 3–6 in our Opinion and Order of August 19, 1970, in *Turnoff*.

2. *Ibid.*, pp. 6–8.

3. *Ibid.*, p. 12.

4. *Ibid.*, p. 8.

stances and whether such method is manageable in the context of this case, we have held several hearings and directed extensive briefing on this point. However, after a review of these proceedings and memoranda, we have concluded that for several reasons it would be inappropriate to attempt to decide these issues at this early stage of the case. First, we do not have sufficient information on the cost and coverage of the means of publication suggested by the plaintiff. Second, because we do not have any information as to the geographical or other distribution of the class members, we cannot make any rational conclusion as to the size of the class which the plaintiff will be permitted to represent. Obviously until we know what the dimensions and concentration of a manageable class are, we cannot determine what form of notice will be required. By the same token, it is possible that our decision as to the dimensions of the class could be strongly influenced by what methods of notice we deemed necessary under the circumstances.

■ There is another difficulty as well. In one of the memoranda submitted to us for consideration on this motion, the plaintiff seems to intimate that he is only prepared to contribute approximately $300.00 to pay for notice to the other members of the class he seeks to represent. Regardless of which form of notice we ultimately decide is mandated by Rule 23 under the circumstances of this case, it is clear that such notice will cost substantially more than $300.00.[5] At the same time we have concluded that in a case such as this, the expense of furnishing at least the initial notice to the class members must fall on the representative party when he is the plaintiff. *Eisen, supra,* 391 F.2d 555 at 568; Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967); Herbst v. Able, 47 F.R.D. 11, 22 (S.D.N.Y.1969); *Cf.* 3B Moore's Federal Practice, ¶23.55 and cases there cited. ("Logically the mechanical and financial burden of giving the notice required by (c) (2) should be borne by the plaintiff as a concomitant of maintaining his class action.")[6] Therefore it is clear that the plaintiff will have to provide substantially more financial support to the case than he now seems willing to offer if he is to be able to adequately represent his class.

■ However, although we are mindful that "difficulties in promulgating the notice required by Rule 23(c) (2) is a factor which may properly be consider-

---

5. The Court in *Eisen,* considering a numerous and amorphous class such as the one presently before us, stated that "we assume that some sort of ritualistic notice in small print on the back pages of a newspaper would in no event suffice." *Eisen, supra,* 391 F.2d at 569.

6. The cases cited by the plaintiff in this regard, Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968) ; Bragalini v. Biblowitz (S.D.N.Y.1969) and Berland v. Mack, 48 F.R.D. 121, 132 (S.D.N.Y.1969) are all class actions brought by shareholders of a corporation against the corporation, and therefore clearly distinguishable from cases such as the one before us. In suits brought by shareholders, it may be reasonable to impose the duty of notice on the corporation because the corporation has a fiduciary duty to its shareholders who after all own the corporation and because, as a practical matter, the corporation makes frequent mailings to shareholders and can easily insert notice of a case pending against it brought in the name of the shareholders. As the Court stated in *Berland,* 48 F.R.D. at 132:
"* * * Where the claim appears to be a meritorious one and defendants desire it be prosecuted through a class action, it does not seem unreasonable to require the corporate defendant to share the cost of notice, particularly in a case where plaintiffs may be able to reimburse the corporation if the claim is dismissed."
On the other hand, where as here the plaintiffs are numerous, unidentified and have no relation to the defendant other than the purchase of a manufactured good, the imposition cost of notice on the defendant at an early stage of the case would be highly unfair and raise serious questions of due process.

ed in weighing the feasibility of management of the proposed class action", Philadelphia Electric Company v. Anaconda American Brass Co., *supra*, 43 F.R.D. 452 at 462, and although for reasons just considered we do not deem it appropriate to resolve these issues at this time, *Ibid.*, we have decided to allow the plaintiff to tentatively maintain a class action on the condition that at a later time he demonstrate to us that notice can be given to the members of his class in a manner which complies with Rule 23, is manageable, and which he is prepared to finance. At the same time, in addition to the aforementioned specific condition, we reserve all of our powers pursuant to Rule 23(c) (1) to alter or amend our order or to deny class action treatment at a later time should circumstances warrant.

■ We have reached the foregoing conclusion for a number of reasons. First, for reasons which are more fully elaborated in our opinion in *Turnoff*, we have concluded that except for the issues relating to notice and manageability which we have just discussed, the plaintiff has demonstrated that as of this time a class action is proper pursuant to Rule 23(a) and (b) (3). Second, it is clear that a definitive decision as to notice and manageability under these circumstances may not be reached until a later stage of this case; indeed it may be impossible to finally determine the issue of manageability until shortly before trial. At the same time, "* * * if there is to be an error made, [it should be] in favor and not against the maintenance of the class action." Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), Kahan v. Rosenstiel, *supra*, and it is therefore the better practice to tentatively allow an action to proceed as a class action if it meets the criteria of Rule 23 at the outset of an action, even though it is conceivable that it may become unmanageable at a later time, see Green v. Wolf Corp., 406 F.2d 291, 298, fn. 10 (2nd Cir. 1968), City of Philadelphia v. Emhart Corporation et al., 50

F.R.D. 232 (D.C.1970). Third, we think that it would be most appropriate not to decide the issues of notice and manageability until there is an opportunity for further discovery and until we have heard and decided any preliminary motions which the plaintiff desires to make. At that time we could make a better informed and more definitive decision. For us to direct further hearings and briefing on this issue at this time would probably not be productive and would delay the orderly and expeditious disposition of the case. Fourth, under all of these circumstances, and after several hearings and extensive briefing on the class action motion, we think it is only fair to the parties to make a preliminary, if tentative, decision on the motion so that further proceedings will be directed toward the issues which we deem critical. Since the order is under Rule 23 conditional and subject to alteration at any time, the ultimate outcome on the class action issue should not be affected.

Finally, we want it to be clear that our foregoing conclusions should not be taken to imply that we will allow the plaintiff an indefinite time to satisfy the condition provided in our order. We concur with the conclusion of the Second Circuit in *Eisen*, *supra*, 391 F.2d at p. 570 that:

"It may be that in some situations it is better at the outset to decide that the proceeding may be prosecuted as a class action and leave for later resolution some of the debatable matters, such as the sufficiency of the representation or the notice to be given, or the feasibility of meeting problems of judicial administration. [However] * * * we think it would be most amiss to let [a] case go ahead until it becomes hopelessly entangled in a mass of procedural detail and expense from which it may not be easy or even possible to extricate it with justice to the parties by the simple means of deciding at a later day that the order permitting the case to pro-

ceed as a class action was improvidently granted."

While preliminary motions are being considered, such problems should not arise, and neither party should be unduly prejudiced because this case will proceed as any other one. However, at the time notices are to be sent out and procedures are established to handle responses, all parties including the Court are put to great effort and expense which would not be worthwhile unless there is good assurance that the method of notice required by Rule 23 and provided for by the plaintiff is manageable.

■ A concluding caveat is appropriate. The burden is on the plaintiff to demonstrate that maintenance of a class action is proper, Philadelphia Electric Company v. Anaconda American Brass, Co., *supra*, and the burden will be on the plaintiff to show that the aforementioned condition to the maintenance of a class action is satisfied. In the interest of expediting disposition of the case and narrowing the issues as to the class action we have directed the parties to brief and provide documentary information on certain issues. However, now that the issues are narrowed, we expect that the plaintiff will take all necessary discovery and be prepared with the specific information required to resolve the aforementioned issues definitively at the appropriate time.

### ORDER

AND NOW, this 22nd day of September, 1970, IT IS ORDERED that this case may pursuant to Rule 23(c) (1) be maintained as a class action with the express condition that the plaintiff demonstrate to us a procedure for notifying the other members of the class he seeks to represent, which is manageable and satisfies the requirements of Rule 23, and which he is prepared to pay for. In addition, we fully reserve all of our powers pursuant to Rule 23(c) (1) to alter or amend this order or to deny class action treatment at any time should circumstances warrant.