*1061 OPINION OF THE COURT
Seymour Lakritz, J.
In this age discrimination action plaintiffs move for a class action determination pursuant to CPLR 902. Defendant, Equitable Life Assurance Society of the United States (hereinafter “Equitable”), opposes the motion for class status and alternatively moves for a stay of the determination pending further discovery.
I. FACTS
Plaintiffs and the class they seek to represent are terminated and demoted employees of defendant. They bring this action to recover compensatory and punitive damages and for declaratory and injunctive relief. The gravamen of the complaint is that Equitable engaged in a pattern of discriminatory employment policies and practices in contravention of section 296 of the New York State Human Rights Law (Executive Law) which proscribes age discrimination in employment; including terminations or demotions due to, in whole or in part, an employee’s age.
In or about August, 1978, defendant began a massive reduction in staff personnel allegedly to reduce costs and improve profitability. Approximately 700 employees were terminated or demoted, of which some 70% were over 40 years of age. On September 7,1979, suit was commenced by six former employees of Equitable in the Federal District Court, Southern District of New York (Burns v Equitable Life Assur. Soc. of U. S., 79 Civ 4726), alleging a policy of age discrimination in violation of Title 29 (§ 623, subd [a]) of the United States Code. To date, 127 persons have filed consents to join the Burns litigation. The within action was commenced on September 10, 1979 alleging a similar pattern of age discrimination in violation of State law.
On November 19,1979 plaintiffs herein filed a motion for class status determination pursuant to CPLR 902. Defendant cross-moved for a stay pending further discovery, which was granted. Thereafter, defendant conducted examinations before trial of the three named plaintiffs in this action and the six lead plaintiffs in the Federal court action. In addition, hearings on three separate occasions have been *1062 held before this court. Defendant contends that plaintiffs have failed to carry their burden of satisfying all the class action criteria under CPLR 901 and 902.
II. PRECERTIFICATION DISCLOSURE
Initially, a determination must be made as to the extent to which disclosure, relating to the facts required to maintain a class action and to the underlying merits of the action, should be allowed prior to the maintenance of a suit as a class action. Under CPLR 901 and 902 and the Federal class action statute, on which the State statute was based in relevant part, discovery has generally been limited to determining those elements necessary to class status itself (Vallone v Delpark Equities, 95 Misc 2d 161; Matter of Knapp v Michaux, 55 AD2d 1025; Spatz v Wide World Travel Serv., 70 AD2d 835). Discovery, relevant to the merits of the claim, has not been permitted at this stage of the proceeding, so long as a cause of action is stated which is neither spurious nor sham (Seligman v Guardian Life Ins. Co. of Amer., 59 AD2d 859; Compact Electra Corp. v Paul, 93 Misc 2d 807; Cusick v N. V. Nederlandsche Combinatie Voor Chemische Industrie, 317 F Supp 1022; Yaffe v Powers, 454 F2d 1362; Simon v Cunard Line, 75 AD2d 283). This is so because the language of the rule and the cases all articulate the desirability of determining maintainability of the class action at what has been called “the earliest pragmatically wise moment” (Berman v Narragansett Racing Assn., 48 FRD 333,336; Harriss v Pan Amer. World Airways, 74FRD 24). While, certainly, the court may order a postponement of the class determination pending discovery (Pearlman v Gennaro, 17 FR Serv 2d 666), the thrust of the rule is on a prompt determination. CPLR 902 provides that “[w]ithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained.”
As aids in determining whether this action should proceed as a class action, we have the benefit of the pleadings, the parties’ affidavits, several memoranda of law, a transcription of the depositions taken of the three named plain *1063 tiffs in this suit and the lead plaintiffs in the Federal action, and three preliminary hearings held before this court. While we are aware that the record bearing on class issues cannot be assumed to be complete at this stage in the proceedings (Harriss v Pan Amer. World Airways, supra), this copious record certainly contains sufficient information upon which this court can make a class action determination. Considering the extensive passing of time since this action was commenced, for us to direct or permit further discovery at this time would probably not be productive and would delay the orderly and expeditious disposition of this case.
Accordingly, defendant’s motion to postpone the determination of class status is denied.
III. CERTIFICATION OF THE CLASS
A. GENERAL CONSIDERATIONS
The court is now faced with plaintiffs’ request to maintain this action as a class action. Plaintiffs do not dispute that they have the burden of establishing that each of the class action prerequisites of CPLR 901 and 902 are satisfied not by mere repetition of the rule but with specific facts sufficient to meet the rule’s requirements (Petrosino Seafood Corp. v Consolidated Edison Co. of N. Y., 97 Misc 2d 110; Guadagno v Diamond Tours & Travel, 89 Misc 2d 697; Hauck v Xerox Corp., 78 FRD 375). In making this determination, the court is aware that for purposes of the within motion the substantive allegations of the complaint must be deemed to be true (United States v Trucking Employers, 75 FRD 682).
We are also mindful of the underlying considerations of public policy to guide us in our determination. First, class certification is essentially a matter of procedure intended to facilitate the fair and expeditious adjudication of these rights and obligations of the parties and it is not determinative of those rights and obligations (Huff v N. D. Cass Co. of Ala., 485 F2d 710; Harriss v Pan Amer. World Airways, 74 FRD 24, supra; Yaffe v Powers, 454 F2d 1362, supra). Second, “the rule must be liberally construed with a view to *1064 enhancing the use of class actions as a means of vindicating rights of absent members who are unable, for one reason or another, personally to prosecute” (Berland v Mack, 48 FED 121,125; Vallone v Delpark Equities, 95 Misc 2d 161, supra). If there is error made, it should be in favor of and not against the maintenance of the class action (Hohmann v Packard Instrument Co., 399 F2d 711; Eisen v Carlisle & Jacquelin, 391 F2d 555; Esplin v Hirschi, 402 F2d 94).
Accordingly, at this stage of the proceeding, considering the broad language of CPLR article 9, the discretion vested in this court and by underlying considerations of public policy, the court is satisfied that the prerequisites for a class action as specified in CPLR 901 and 902 are more than adequately satisfied (Matter of Froehlich v Toia, 71 AD2d 824; Matter of Shook v Lavine, 49 AD2d 238). However, since defendant vigorously contests that the requirements for maintenance of class action status have been met, they will be examined seriatim.
B. CPLR 901
CPLR 901 (subd a) sets forth five mandatory procedural requirements which must be met for maintaining an action by a representative party on behalf of the class. They are (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and (5) the class action is superior to other available methods for the adjudication of the controversy.
1. SIZE OF THE CLASS (CPLR 901, SUBD A, PAR 1).
The first requirement to be met is that the class is so numerous that joinder of all members is impracticable. Defendant contends that the numbers alleged by plaintiffs are pure speculation making a determination that joinder is impracticable impossible at this time. Defendant further *1065 alleges that ultimately the class would include only 35 to 40 persons.
Admittedly, plaintiffs seek to represent a class composed of a group of employees whom they cannot at this time identify with precision. However, there is no requirement that the exact number of class members be immediately known (Petrosino Seafood Corp. v Consolidated Edison Co. of N. Y., 97 Misc 2d 110, supra). One of the considerations will obviously be the number of people involved. Numbers alone, however, do not determine impracticability. The “courts should not be so rigid as to depend upon mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend upon all the circumstances surrounding a case” (De Marco v Edens, 390 F2d 836,845). There is little guidance in the cases as to how many are so numerous that joinder would be impracticable. However, “the trend has been to regard classes of approximately thirty or less as not being sufficiently numerous, although there are exceptions” (Harriss v Pan Amer. World Airways, 74 FED 24,45, supra; see Cypress v Newport News Gen. & Nonsectarian Hosp. Assn., 375 F2d 648).
It is admitted that approximately 700 employees were terminated or demoted. Plaintiffs’ allegations that the potential class members include all terminated or demoted employees who have not filed consents in the pending Federal action, some 575 persons, is sufficient. To date, the names and addresses of only about 175 affected employees are known. However, the names and addresses of these potential members are easily discoverable. The evidence in the record as to the size of the class is not mere speculation. The class of interested litigants is already in existence, is finite and definable at the outset (Cunningham v Ellington, 323 F Supp 1072). It would be improper to deny class status, as defendant would have us do, upon mere speculation as to how many members would seek exclusion, are apathetic about this action, or might prefer to proceed in the pending Federal action. The statistics furnished by plaintiffs are sufficient to determine that the potential number of persons to be joined would be too large so that joinder would be impracticable, yet the number of persons is not so large as to render the action unmanageable or one simply designed to *1066 harass the defendant (Berland v Mack, 48 FRD 121, supra). The numerosity of the class should be determined on the basis of factors ascertainable by the court at the time suit is brought, such as the number of employees who might have such a claim, and not the number of those who will ultimately recover (Weiss v Tenney Corp., 47 FRD 283). Should it later appear that the actual size of the class is much smaller than the figures asserted by plaintiffs, making joinder practicable, the class allegations can be struck at that time.
2. COMMON QUESTIONS OF LAW OR FACT (CPLR 901, SUED A, PAR 2).
Defendant contends that noncommon questions predominate because even if plaintiffs could establish a company-wide policy of age discrimination, the decision to terminate or demote each individual employee was dependent on any number of factors peculiar to that individual. However, all that is required to satisfy this prerequisite at this stage of the proceeding is that common questions predominate over individual ones (Ray v Marine Midland Grace Trust Co., 35 NY2d 147). This predominance test is a “pragmatic, functional test with the determination resting in each case upon whether the group is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members’ interest in matters peculiar to them” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08, p 9-31). It is unnecessary that every issue be common to each member of the class (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941; Vickers v Home Fed. Sav. & Loan Assn. of East Rochester, 87 Misc 2d 880, affd in part, mod in part on other grounds 56 AD2d 62). It is sufficient that the wrong complained of is identical for each member of the putative class and predominates (Gilman v Merrill Lynch, Pierce, Fenner & Smith, supra).
In this case, plaintiffs have asserted specific claims of injury resulting from the alleged unlawful employment practices of defendant. It has been held that “[t]he existence of a common plan, pursuant to which a common course of conduct occurred, is a class issue” (Bryan v Amrep Corp., 429 *1067 F Supp 313, 319). The common factual question relates to the procedures defendant maintained to terminate or demote its employees. The common question of law is whether these procedures violated section 294 of the Executive Law.
The individual issues, those of damages and affirmative defenses directed at individual plaintiffs, will not arise until liability to the general class is established. As such, the common issue pertaining to the question of liability will, at least at the outset of trial, predominate (Weiss v Tenney Corp., 47 FRD 283, supra).
3. TYPICALITY OF THE CLAIMS OF THE REPRESENTATIVES (CPLR 901, SUED A, PAR 3).
Defendant contends that plaintiffs are not typical of all the potential class members because they are terminated employees who held lower level jobs and they seek to represent demoted employees and employees who held senior level positions.
Furthermore, defendant contends that the employees worked in different departments of the defendant corporation and that recovery, if such is eventually awarded, would be different for each class member.
Defendant misconstrues the requirement of typicality. Age is a physical characteristic which affects all job levels equally (Wetzel v Liberty Mut. Ins. Co., 511 F2d 199). The interests of the named plaintiffs in combatting age discrimination practices are coextensive with all employees over 40, whether formerly or presently employed or whether in higher or lower level positions. Even if each worked in different departments of the defendant, the representatives have the same interests in being free from age discrimination (Hill v Western Elec. Co., 76 FRD 4). In addition, terminated employees are ideally situated to represent demoted employees because they are familiar with the company’s employment practices and yet free from any possible coercive influence of the company’s management. Plaintiffs are, in fact, better situated than present employees to present an intelligent and strongly adverse case against allegedly discriminatory practices (Mack v General Elec. Co., 329 F Supp 72; Wetzel v Liberty Mut. Ins. Co., *1068 supra; Johnson v Georgia Highway Express, 417 F2d 1122). It is not suggested that the named plaintiffs’ interests are in any way antagonistic to that of the class.
Furthermore, the fact that proof of damages may differ among individual members is insufficient to defeat class action status, especially since class action damages are easily ascertainable (Goldman v Garofalo, 96 Misc 2d 790; Herbst v Able, 47 FED 11; Werfel v Kramarsky, 61 FED 674; Vickers v Home Fed. Sau. & Loan Assn. of East Rochester, 87 Misc 2d 880, mod 56 AD2d 62, supra).
Since the interests of all class members coincide with respect to the merits of this suit, then, in advocating their own interests, the named parties will necessarily represent the interests of absentees as well (United States v Trucking Employers, 75 FED 682, supra).
4. FAIR AND ADEQUATE REPRESENTATION OF THE CLASS (CPLR 901, SUED A, PAR 4).
Defendant contends that plaintiffs are unable to protect the interests of the class because they lack essential information about the policies and practices of defendant, their financial resources are too limited to litigate vigorously, and plaintiffs’ counsel has engaged in unethical conduct. This is perhaps the most crucial requirement because the judgment, if plaintiffs prevail on the merits, will conclusively determine the rights of absentee members (Hansberry v Lee, 311 US 32).
The allegations of age discrimination are stated with a great deal of specificity in the complaint which is sufficient at this juncture (Belcher v Bassett Furniture Inds., 588 F2d 904). How plaintiffs will prove their case, if they can prove it at all, is not under consideration here. Further information about the policies and practices of defendant awaits discovery.
It is proper for the court to be concerned about the financial resources of plaintiffs to insure that the suit will be adequately prosecuted. However, the adequacy of financial resources of the class does not only depend on the income and assets of the named plaintiffs (Guadagno v *1069 Diamond Tours & Travel, 89 Misc 2d 697, supra). In this case the plaintiffs’ counsel has stated for the record that the legal fees are being borne by him on a contingency fee basis. Such an agreement has been held appropriate in a class action context (Halverson v Convenient Food Mart, 458 F2d 927). Indeed, this type of arrangement would seem to be a predictable element of any class action brought by plaintiffs with individually small damage claims or where their financial resources are limited. The out-of-pocket costs and disbursements are being advanced by counsel, defrayed by the named plaintiffs or being paid for by an organization created for the purpose of financing such law suits, Older Persons Employment Rights Association (OPERA). Therefore, whether counsel, OPERA or the named plaintiffs can and will pay the expenses of this suit, rather than whether plaintiffs can individually afford this litigation, becomes the relevant question (Sayre v Abraham Lincoln Fed. Sav. & Loan Assn., 65 FRD 379).
It is proper for the court to consider the ethical conduct, competence, experience and zeal of counsel for plaintiffs in deciding whether to maintain the class (Stavrides v Mellon Nat. Bank & Trust Co., 60 FRD 634; Harriss v Pan Amer. World Airways, 74 FRD 24, supra). Class action status should be denied where counsel’s unethical conduct has been or is prejudicial to the interests of the class or results in creating a conflict of interest between the attorney and the class and the attorney is therefore unable to protect the interests of the class (Korn v Franchard Corp., 456 F2d 1206; Taub v Glickman, 14 FR Serv 2d 847). Generally, the unethical conduct condemned by the courts has been egregious misconduct or extreme examples of solicitation and champerty (Korn v Franchard Corp., supra; Stavrides v Mellon Nat. Bank & Trust Co., supra; Carlisle v LTV Electrosystems, 54 FRD 237).
However, there is nothing in the record herein to indicate that counsel would not vigorously and effectively litigate this action. In fact, the conduct complained of by defendant would lead this court to believe that the attorney is conscientiously working in the best interests of his clients and absent class members (Kronenberg v Hotel Gov. Clinton, 281 F Supp 622; Halverson v Convenient Food Mart, supra). In so *1070 deciding we are not making a determination that plaintiffs’ counsel has or has not engaged in unethical practices, but only that the allegations are not sufficient to stop class determination at this time.
5. SUPERIORITY OF CLASS ACTION (CPLR 901, SUED A, PAR 5).
Defendant’s contention that the pending Federal action is superior to this State court action is without foundation. “The exercise of a State court’s power to stay proceedings therein until determination of an action pending in a Federal court sitting in this State is not a matter of right, but a matter of comity, orderly procedure and judicial economy and discretion” (Kayser v Horton, 42 AD2d 839; General Aniline & Film Corp. v Bayer Co., 305 NY 479). Moreover, a litigant may seek the same relief in both State and Federal court “until judgment is obtained in one court, which may be set up as res judicata in the other” (Admiral Corp. v Reines Distr., 9 AD2d 410, 411). Factors to consider in making this determination are the extent to which the two actions directly overlap, which action allows a more complete disposition of the issues, which was brought first, the motive behind the bringing of the second suit and behind the application for a stay, and the expertise of the respective courts (Gallo v Mayer, 50 Misc 2d 385, affd 26 AD2d 773; General Aniline & Film Corp. v Bayer Co., supra).
In the instant case the parties in the two suits are not identical (Kistler Instrumente A. G. v PCB Piezotronics, 419 F Supp 120) and plaintiffs’ choice of forum should rarely be disturbed (Ackert v Ausman, 29 Misc 2d 962, affd 20 AD2d 850). In any event, the pendency of one class action does not preclude the bringing of a second class action by another member of the class even in the same court (Dresdner v Goldman Sachs Trading Corp., 240 App Div 242). The putative class will not overlap because we can so define the class to exclude those individuals who have already filed consents in the Burns litigation. The difference of three days in the commencement of the two actions is not dispositive, especially since both actions are in the preliminary stages and no harassment has been shown by defendant (Levy v Pacific Eastern Corp., 154 Misc 655).
*1071 Plaintiffs’ allegations that complete relief for all potential members cannot be recovered in the Federal action, which was their reason for filing suit in State court, is sufficient to find that the State court action should not be stayed. Class suits brought under the Federal Age Discrimination in Employment Act (ADEA) have been denied the benefits of rule 23 of the Federal Rules of Civil Procedure ( US Code, tit 28, Appendix), which is the liberal Federal rule relating to class actions upon which CPLR article 9 was expressly based (La Chapelle v Owens-Illinois, 513 F2d 286; Roshto v Chrysler Corp., 67 FRD 28). They are required to operate under the more restrictive procedure of section 216 (subd [b]) of Title 29 of the United States Code, which provides that only persons who affirmatively consent to join the action are affected by its judgment and does not provide for any court-approved notice to potential class members apprising them of the pending action (Wagner v Loew’s Theatres, 76 FRD 23; McGinley v Burroughs Corp., 407 F Supp 903; Hill v Western Elec. Co., supra; Schmidt v Fuller Brush Co., 527 F2d 532). Because of the unavailability of rule 23 of the Federal Rules of Civil Procedure, there is no way under Federal law to notify potential class members of the pendency of the Burns suit.
Moreover, “[w]here there is a need to remedy a common legal grievance, and where a class action serves to achieve economies of time, effort and expense, it is ‘superior’ to other forms of litigation even though individual claims are large” (Bryan v Amrep Corp., 429 F Supp 313, 318, supra). It is possible that due to ignorance of their legal rights or due to their personal financial situation, especially when the defendant has impressive legal strength as in this case, individuals will not redress their grievances through a lawsuit (Moscarelli v Stamm, 288 F Supp 453).
C. cplr 902
The prerequisites of CPLR 901 having been met, CPLR 902 comes into play. It provides five illustrative, though not exhaustive, considerations to be weighed before finally determining whether the court’s discretion should be invoked to permit maintenance of the class action. They *1072 include: the interest of members in controlling the prosecution of separate actions, the impracticability or inefficiency of prosecuting separate actions, the extent of litigation previously commenced, the desirability of concentrating the litigation in this court, and the difficulties inherent in the management of the class action. Most of these considerations are implicit in CPLR 901 and have hitherto been discussed.
One remaining factor is the manageability of this action (CPLR 902, subd 5). Here, there is a finite number of similarly situated plaintiffs. All members of the class will, with discovery, be known by name and address. This is a potential class which can be adequately notified (Amman v Suffolk County, 90 Misc 2d 871; Hohmann v Packard Instrument Co., 399 F2d 711, supra).
The court is more than satisfied that all the prerequisites for a class action as specified in CPLR 901 and 902 have been satisfied.
Accordingly, the motion to declare this action a class action is granted. The cross motion to stay the State court action pending determination of the Federal suit is dismissed and denied. The class herein is defined as all those employees who were terminated or demoted on or about August, 1978, over the age of 40 who have not and will not file consents in the pending Federal action and who do not request exclusion from the class within 10 days after notice of this class action (CPLR 903).
The court will, of course, oversee the progress of this action. The discretion of this court persists under CPLR 902 to alter or amend our order or deny class action treatment if at any stage of the action it develops that the class is too unwieldy or small, the representation is ineffective, or that the principal issue is not appropriate for adjudication in a class action (Ray v Marine Midland Grace Trust Co., 35 NY2d 147, supra).
D. NOTICE AND COSTS OF NOTICE (CPLR 904).
The court is required under CPLR 904 to direct that “reasonable notice of the commencement of a class action *1073 shall be given to the class” (CPLR 904, subd [b]), taking into consideration:
“I. the cost of giving notice * * *
“II. the resources of the parties and
“III. the stake of each represented member of the class” (CPLR 904, subd [c]).
It is left to the court’s discretion whether plaintiff, defendant or both will bear the costs of giving notice. (CPLR 904, subd [d].)
1. NOTICE
The notice mandated by this provision is designed to fulfill the requirements of due process to which a class action proceeding is subject (Cusick v N. V. Nederlandsche Combinatie Voor Chemische Industrie, 317 F Supp 1022, supra). What constitutes adequate notice, of course, depends on the facts and circumstances of each case (Eisen v Carlisle & Jacquelin, 391 F2d 555, supra).
Plaintiffs herein seek to represent a class of about 575 employees whom they cannot at this time identify with precision. However, the names and addresses of the putative class are easily ascertainable because they are known with certainty by the defendant. Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive so as to prevent the class action from being prosecuted, individual notice by first class mail would be the most “reasonable notice” (Berland v Mack, 48 FRD 121, supra).
2. COST OF NOTICE
The New York State Legislature has left it to the discretion of the court to impose costs in each case, bearing in mind the objectives that the class action device should be available to prosecute a meritorious claim instead of being foreclosed as too expensive, but at the same time should not be employed to penalize a defendant corporation because of its financial strength or used as a method for harassment.
*1074 Accordingly, we direct that the notice and the cost of furnishing it be handled as follows: (1) The parties will submit within 10 days a form of proposed notice to members of the class for approval by this court. This notice shall advise each member that: (a) the court will exclude him or her from the class if so requested within 20 days; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) the court has made no determination of the merits of this action.
(2) Within 10 days thereafter defendant, at its expense, will furnish to plaintiffs’ counsel a list of the names and addresses of all persons who were terminated or demoted on or about August, 1978.
(3) Within 10 days after receipt of the list, plaintiffs’ counsel will mail to each identified employee a copy of the notice by first class mail at plaintiffs’ expense.
(4) The expenses initially incurred by the parties in connection with the giving of notice shall be taxed in accordance with such orders as may ultimately be entered by the court upon final disposition of the action.