**R & D BUSINESS SYSTEMS, et al., Plaintiffs,**

**v.**

**XEROX CORPORATION, Defendant.**

**GEMINI EQUIPMENT PARTNERS INCOME FUND I, et al., Plaintiffs,**

**v.**

**XEROX CORPORATION, Defendant.**

**Nos. 2:92CV042, 2:92CV043.**

United States District Court, E.D. Texas, Marshall Division.

June 7, 1993.

Eric W. Buether, Mike McKool, Jr., Charles W. Cunningham, Gary J. Cruciani, McKool Smith, P.C., Dallas, TX, Franklin Jones, Jr., Samuel F. Baxter, Rosemary T. Snider, Jones, Jones & Curry, Marshall, TX, R. Steven Berry, J. Daniel Leftwich, Berry & Leftwich, Washington, DC, Mark Tobey, Asst. Atty. Gen., Antitrust Div., Texas Atty. Gen.'s Office, Austin, TX, for plaintiffs.

Peter K. Bleakley, Arnold & Porter, Washington, DC, Lawrence L. Germer, Orgain, Bell & Tucker, Beaumont, TX, Peter W. Marshall, Sr. Counsel, Xerox Corp., Stamford, CT, for defendant.

### ORDER AND OPINION

HALL, District Judge.

CAME ON TO BE HEARD THIS DAY the Defendant's Motion to Revise Scheduling Order. The Court, after reviewing the Motion, finds that it is well taken. The Court will, therefore, enter a Second Amended Scheduling and Discovery Order.

## I. BACKGROUND

Plaintiffs in these two actions charge that Defendant Xerox 1) monopolized and attempted to monopolize the equipment market, Xerox equipment market, and service market for high volume copiers and printers; 2) engaged in illegal tying arrangements that exclude or disadvantage competition in the above markets; and 3) engaged in conduct which unlawfully restrained interstate trade and commerce, all in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. These two cases have been consolidated for discovery purposes. Xerox now asks the Court to revise the Amended Scheduling and Discovery Order entered in these actions on November 16, 1992.

## II. DISCUSSION

On February 23, 1993, the Court entered its order granting the Plaintiffs' Motion for Class Certification in *R & D Business Systems v. Xerox*, 2:92cv0042 ("the class action"). Xerox alleges that the Court's decision to certify the class has had a profound effect on the scope of this lawsuit, and now asks that the Court revise its Amended Scheduling and Discovery Order governing these consolidated cases. According to Xerox, in order for it to have a reasonable opportunity to defend itself, four major changes must be made to the scheduling order: 1) discovery should be lengthened to January, 1994; 2) plaintiffs should be required to disclose the formulas

they will use to attempt to prove common impact and damages before the close of fact discovery; 3) the trial date should be moved from October 12, 1993 to June, 1994, and 4) notice to end users of the pendency of the class action should be postponed.

Plaintiffs in both cases oppose Xerox's motion.[1] The class action plaintiffs argue that Xerox's motion would only result in a substantial delay and increase in the cost of this litigation. Plaintiffs claim that the parties have fully understand the nature and scope of this case from the outset, and that Xerox agreed to the October, 1993 trial setting knowing that class certification was a distinct possibility. However, Plaintiffs do concede that the Amended Scheduling and Discovery Order should be modified to allow additional discovery before trial, although they vigorously oppose an extension of the trial date.

## A. Discovery Deadline

Xerox first requests that the time allowed for fact and expert discovery be extended to January 7, 1994 so that Xerox will have sufficient time to conduct necessary depositions and other discovery and investigation. Xerox also asks that the number of depositions permitted be increased from 25 to 50 per side, and that the number of 12 hour depositions be increased from five to ten. Xerox also asks that the depositions it takes of absent ISOs and end users be regarded as depositions of plaintiffs for purposes of determining how the six or twelve hours of depositions are to be allocated among the parties.

Plaintiffs propose an extension of the discovery deadlines of May 28, 1993 (for Xerox) and June 11, 1993 (for Plaintiffs) to August 27, 1993 for all parties, and an extension of the deadline for disclosure of expert testimony from June 7 to July 15, 1993. Plaintiffs also suggest that an increase of 12 depositions per side is sufficient, and do not object to increasing the number of 12 hour depositions from five to ten. Plaintiffs object to the proposed change in deposition practice because the absent ISOs and end users are not under the control of Plaintiffs' attorneys, and cannot be compelled to testify at trial if Plaintiffs wish to clarify the testimony elicited by Xerox.

■ The Court notes its concern that civil litigation must become more cost-effective by reducing what Judge Edith H. Jones of the Fifth Circuit Court of Appeals has termed the "transactional costs" of litigation, so that there is a higher ratio between claims or judgments paid and attorneys' fees and other costs incurred in litigation. *See* Jones, *Restructuring Civil Litigation in the '90's,* 24 Tex.Tech.L.Rev. ix, xi (1993). A recent study by the Rand Institute for Civil Justice concluded that our legal system incurred $16–19 billion in transaction costs to deliver $14–16 billion in compensation to plaintiffs.[2] Further, of all the money paid in compensation, the successful plaintiff received about 56% in net compensation, while the system consumed the rest. *Id.* The Plan seeks to reduce these transactional costs by containing the amount of discovery permitted in a given case, and the time permitted for such pretrial activity.[3, 4] By enacting the Civil

---

1. The Plaintiffs in the *Gemini* case also urge the Court not to extend the trial date for its case as a result of the additional time needed to prepare the class action for trial. In the event that the Court does extend the trial setting for the combined cases, the *Gemini* plaintiffs request that their action be separated and allowed to proceed to trial at the original trial setting.

    The Court understands the plaintiffs' concerns, however it considers the benefits to the parties in *Gemini* of a slightly earlier trial setting to be far outweighed by the costs of separating the cases at this stage in the proceedings.

2. Rand Institute for Civil Justice, 1991–1992 Annual Report at 52 *cited in* Patrick E. Higginbotham, *Discovery,* in National Legal Center for the Public Interest, A Plan to Improve

America's System of Civil Justice from the President's Council on Competitiveness, at 25, 31–32 (1992).

3. The late British historian C. Northcote Parkinson created what has been termed Parkinson's Law in 1957. It states that "work expands so as to fill the time available for its completion." By restricting the time available for discovery, the Plan hopes to restrict delay, while preserving adequate time for needed discovery.

4. A prominent feature of the Plan is the principle that the permissible amount of discovery will be controlled by the Court, and not the attorneys. This is in line with many commentators and courts, who have noted that a principal cause of unnecessary delay, especially in antitrust and

Justice Expense and Delay Reduction Plan, the Eastern District has attempted to balance the needs of the parties for legitimate discovery against the costs of that discovery to litigants and to our society at large.

■ In conducting this balancing in this case, the Court finds that extension of the discovery deadlines is warranted, due to the complex nature of this case, and the need for additional time to conduct necessary discovery. However, the Court declines to extend the deadline to January of 1994, as requested by Xerox. Such an extension is, in the Court's view, unnecessarily long, and contrary to the Plan's goals of limiting time available for discovery. It is also significant that the parties *agreed* to these deadlines in the Court's Amended Scheduling and Discovery Order, without any proviso indicating that such modifications would not be sufficient if the Court decided to grant class certification.

Accordingly, the Court will reset the discovery deadline to August 27, 1993 for all parties, with the deadline for disclosure of expert testimony moved back to July 15, 1993. The parties will also be permitted an additional fifteen (15) depositions per side, and the number of 12 hour depositions will be increased from five to ten. Finally, the Court finds the Plaintiffs' objection to the proposed change in deposition practice to be well-taken, and declines to accept Xerox's proposed change on this issue.

## B. Disclosure of Plaintiffs' Formulas

Xerox next seeks an order requiring that plaintiffs disclose their formula for proving impact and damages well before the close of fact discovery. Specifically, Xerox asks for a statement from the plaintiffs setting forth precisely how the three end user named plaintiffs were injured and in what amounts, together with identification of all the assumptions on which those calculations are based. Xerox notes in its reply brief at 5, n. 4 that it will be able to conduct its discovery more efficiently if this information were provided earlier. Plaintiffs have not opposed this request, therefore it will be granted without further discussion.

## C. Trial Setting

■ Xerox argues that the trial setting should be moved back some eight months to allow time for additional discovery, investigation, and case development necessary to permit Xerox to file dispositive motions and a motion to decertify one or more of the classes prior to trial.[5] Placing the trial date in early June, 1994 will allow some five months after the close of discovery for Xerox to file and have determined its dispositive motions.

■ The Court notes that numerous commentators have recognized the value of firm trial dates in reducing cost and delay in our civil justice system. *See, e.g.,* Jones, 24 Tex. Tech.L.Rev. at xiii (1993); Kieve, *Discovery Reform,* A.B.A.J. Dec. 1991, at 79. Moreover, the Civil Justice Expense and Delay Reduction Plan adopted by the Eastern District on December 20, 1991 expressly charges judicial officers with setting early and firm trial dates. Art. VI(2). An early and firm trial date, especially in this case, reflects the fact that there are considerations outside of the convenience of the parties in conducting

other complex litigation, is the absence of active judicial management and control. *See, e.g.,* Wright and Miller, *Manual for Complex Litigation,* § 1.10 at 15 (1977). A complex case must be managed with a firm hand. *United States v. American Telephone and Telegraph Co.,* 83 F.R.D. 323 (D.C.D.C. 1979). As Judge Greene stated in *AT & T:*

"the absence of strong judicial control permits discovery to mushroom and issues to go unfocused; delay and obfuscation are more likely to be adopted as litigation tactics; bitterness and suspicion may more rapidly develop and persist between counsel. As a result, excessive motion practice and other examples of dilatory

and overly litigious conduct proliferate, while incentives for stipulations and other potentially expediting types of behavior are reduced."
*Id.* at 327 (*quoting Protracted Cases—Recommended Practices,* 25 F.R.D. 351 at 384 (1960).

5. Xerox asserts that following complete discovery it will be in a position to present the Court will a compelling argument that one or more of the classes should be decertified. The court recognizes that it must monitor its class decisions in light of the development of the evidence. *See, e.g., Richardson v. Byrd,* 709 F.2d 1016, 1018 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

this litigation in a thorough manner to be considered. Plaintiffs allege that Xerox's conduct has caused them substantial injury, and will continue to cause them injury until Xerox is forced to cease its allegedly anti-competitive activity. The Court is responsible for seeing that the interests of these parties are protected by a prompt resolution of this litigation. While a lengthy delay in the trial of this case may profitably be used to conduct additional discovery and briefing, the Court must consider the prejudice that results to the parties and to society at large from a delay in the trial of this case.

However, the Court is forced to reset the trial of this case to accommodate the above changes in the discovery schedule. Xerox argues persuasively that it cannot brief and argue summary judgment and class decertification motions and prepare all pretrial submissions in the six weeks between the close of discovery and trial. In addition, resetting the deadline for the filing of dispositive motions while retaining the current trial setting would place an impossible burden on the Court to resolve the numerous motions that will be filed in this case before trial. For this reason, the Court finds that the trial setting must be moved back approximately one month to allow the Court sufficient time to evaluate the motions that will be filed after the close of discovery.[6]

### D. Notice to End Users

Finally, Xerox asks that the Court delay issuance of notice of the class action to end user class members. Xerox claims that issuance of notice at this time is premature

and will result in irreparable injury to Xerox.[7] Xerox proposes that notification be sent approximately three months before its proposed trial date of June, 1994, after the Court resolves Xerox's motion to decertify some or all of the classes.

Fed.R.Civ.P. 23(c)(2) does not specify when notice must be sent, leaving that decision to the sound discretion of the Court and the circumstances of the particular case. *See Rivera v. Pitino*, 524 F.Supp. 136, 150 (N.D.Cal.1981); *Cusick v. N.V. Nederlandsche Combinatie Voor Chem. Ind.*, 317 F.Supp. 1022, 1024 (E.D.Pa.1970). In deciding when to send notice to class members, the Court must balance several considerations. Most important is to provide plaintiffs with "an opportunity to present their objections" and "a reasonable time … to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); 7B Wright, Miller & Kane, *Federal Practice and Procedure 2d*, § 1788 at 224 (the "main consideration" is whether any delay would prejudice the class). Another important consideration is the harm to a party that may result from notice, as in this case. *See* 7B Wright, et al., § 1786 at 198. When early notice might adversely affect one party while a delay in notice would not prejudice any party, courts have repeatedly chosen to delay the issuance of class notice. *See, e.g., Wooten v. County of Hamilton*, 94 F.R.D. 176, 177 (S.D.Ohio 1982).[8]

However, the Court will not condition the sending of class notice on its ruling on an

---

6. Plaintiff argues that the Court should not continue this case because delay is a major problem in antitrust litigation, citing *United States v. American Telephone and Telegraph*, 83 F.R.D. 323, 326 (D.C.D.C.1979). The Court appreciates the danger of delay, but notes that by the time Judge Greene wrote his opinion in that case, it had been pending for over four and a half years, and at that time was still two and a half years from trial of only some of the issues.

In contrast, this case has only been pending fifteen months, and even with the continuance Xerox requests, it would be concluded just over two years from filing. The delay Judge Greene was concerned with in *AT & T* is therefore not present to a comparable degree in this case.

7. The harm that Xerox claims it will suffer as a result of class notice is described more fully in the Affidavit of David R. Myerscough, attached to Defendant's motion as Exhibit 6.

8. Plaintiffs assert that notice should not be delayed because delay would encourage the "side-line sitting" referred to by Judge Wisdom in his concurrence in *Robinson v. Union Carbide Corp.*, 544 F.2d 1258, 1262 (5th Cir.1977). The Court rejects this argument because there is no danger of "sideline sitting" in this case since, unlike *Robinson* and *Nissan*, the notice in this case will come well before judgment.

anticipated motion for decertification.[9] Waiting until motions for decertification are filed and resolved, following discovery, will impose an unacceptable delay on the resolution of this litigation. The Court considers three months before trial to be an acceptable time period for notice to go out to class members, and will therefore withhold mailing of the class notice until early August.

## III. CONCLUSION

The key issue in resolving this motion is determining whether the Court's order granting class certification justifies a significant extension of the deadlines in this case. After reviewing the motion, the responses and reply, the attachments to the briefs, briefing on the issue of class certification, and the transcripts of proceedings previously conducted in this action, the Court cannot agree with Xerox's contention that the complex nature and scope of this litigation has only now become apparent. Xerox appears to have known the scope of this case from its inception, including the possibility of class certification. Xerox also appears to have understood what discovery would be required in this case when it agreed to the deadlines set forth in the court's amended scheduling order. Further, the underlying purposes of the Plan counsel that the Court enforce its deadlines and trial dates insofar as justice to the parties allows.

While the Court does find that deadlines in this case, including the trial date, must be reset, it declines to push this case back the eight months that Xerox requests. Instead, the Court will extend the discovery deadlines approximately three months and the trial approximately one month in a Second Amended Scheduling and Discovery Order, to be entered contemporaneously with this order.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Revise Scheduling Order is hereby GRANTED. The Court will enter a Second Amended Scheduling and Discovery Order containing the above-detailed changes in the remaining deadlines in this case.

IT IS FURTHER ORDERED THAT Plaintiffs shall provide the formulas for proving impact and damages requested by Xerox within twenty (20) days of the filing of this order.

---

**9.** As this Court noted in *Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 996 (E.D.Tex.1993), the Court's orders are not to be viewed as "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." (*quoting Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill. 1988)).